CHESTER R. ALLEN, RESPONDENT, v. MARIE CASCIO, APPELLANT.—176 S. W. (2d) 553.

Kansas City Court of Appeals. November 8, 1943.

*Thomas E. Deacy* and *Milligan, Kimberly & Deacy* for appellant.

*Cornelius Roach, Francis L. Roach* and *Ted Houx, Jr.,* for respondent.

SPERRY, C.—Plaintiff, Chester R. Allen, sued defendant, Marie Cascio, for damages suffered in a collision between plaintiff's motorcycle, upon which he was riding, and an automobile which was being operated by defendant. The jury found for defendant but the trial court sustained plaintiff's motion for new trial. Defendant appealed.

Plaintiff has adopted defendant's statement of facts, which is as follows:

"Under the allegations of the amended petition, upon which the case was tried, it was alleged that plaintiff's claimed injuries were the result of the fact that defendant, suddenly and without signal or warning, swerved an automobile, which she was driving in an easterly direction on Independence Avenue, to the left in such a manner as to cause the same to come into contact and collision with a motorcycle upon which plaintiff was riding. The collision in question occurred in the daytime on April 29, 1940.

"Plaintiff, at the time of the accident, was a motorcycle patrolman in Kansas City, Missouri. The collision in question occurred at a point in or near the intersection of Independent and Bales Avenues in Kansas City, Missouri. Independence Avenue runs east and west, and Bales Avenue runs north and south. Defendant, accompanied by her mother-in-law, her eighteen-month-old baby and a Miss Bukas, was driving an automobile in an easterly direction on Independence Avenue at a speed of about twenty miles per hour. Plaintiff was likewise proceeding on his motorcycle in an easterly direction on Independence Avenue, and when he reached a point about a half of block west of the scene of the collision, he observed the car being operated by the defendant. There was a double street car line upon Independence Avenue and plaintiff was traveling about in the center of the eastbound tracks, and defendant's automobile was two to three feet south of the south rail of the eastbound tracks. When the motorcycle reached a point about thirty feet west of the west curb of Bales, an automobile, which was in front of the defendant's automobile, made a left hand turn causing defendant's automobile and other traffic to slow down. During this period of time, plaintiff caught up with the defendant's car and, when his front wheel was practically even with the left rear wheel of the defendant's automobile, the defendant's automobile suddenly swerved to the left or north and the front wheel of the motorcycle ridden by the plaintiff brushed the left rear fender enough to cause the motorcycle to overturn. Plaintiff was an experienced motorcycle operator and his motorcycle was equipped with a horn and siren. He was familiar with the intersection where the collision occurred and with the Ordinances of

Kansas City which provided that when one vehicle was about to pass another a warning should be sounded. Plaintiff did not sound any warning when he started to pass defendant's automobile. He was familiar with the Ordinances of Kansas City which provided that the operator of one vehicle should not pass another at a street intersection and knew that it was against the law to do so.

"He testified that the accident occurred right at the intersection, and at a time when the front end of his motorcycle was about to enter the intersection; that it was his intent and purpose to pass defendant's car and in so doing he had reached a point even with the left rear fender thereof.

"It was his intention to pass defendant's automobile as she crossed the intersection. At the time of the accident, both the motorcycle and the automobile were traveling at about the same rate of speed, namely, ten to fifteen miles per hour. Plaintiff testified that he knew it was against the Ordinances of Kansas City to follow another vehicle closer than was reasonable and proper, and that, in passing an automobile, it was his duty to pass to the left of it at a safe distance.

"As he pulled up along side of the defendant's automobile, and at the time it started to swerve to the left, the motorcycle was about three feet from the left side of the car and plaintiff could have gotten over three or four further feet to the north or toward the left and still have been on his side of the road. He testified that a motorcycle could be turned in a much shorter distance than an automobile. He had been following the defendant's automobile with his front wheel about even with the left rear wheel of defendant's car for a distance of about twenty feet before the collision. Immediately after the collision occurred, defendant stated to plaintiff that another car had pulled out from the curb immediately in front of her, without warning, and that she had swerved to the left to avoid collision with the other car, and that she was afraid to forcibly apply the brakes due to the fact that her young baby was in the car with her.

"The defendant, her mother-in-law, Mrs. Gross Cascio, and Louise Bukas, the other passenger in the automobile, all testified that, as defendant's automobile approached the intersection it was traveling at a moderate rate of speed, not over twenty miles per hour, and at the time the left window next to the driver's seat was closed; that just as the defendant's automobile reached the intersection, another automobile, which was parked at the curb on the south side of the street, suddenly pulled out directly into the path of the defendant's car; that defendant had no opportunity to give any signal, but applied her brakes and swerved to the left to avoid a collision with the automobile which pulled out from the curb directly in front of her. Defendant testified that, while her car was equipped with a rear vision mirror, there was a blind spot to the left extreme side, and that she could not have seen a motorcycle traveling in the neighborhood of

her left rear fender, and that she did not know that plaintiff was behind her. She testified that, when the front end of her automobile was five or six feet from the rear end of the automobile parked at the curb, it suddenly pulled out directly ahead of her; that the driver of this automobile gave no sign that he was going to pull out into the traffic and that she did not know the car was going to do so until it started up. She swerved to the left as far as the center of the eastbound car tracks to avoid the collision, and just as she had started to straighten out after swerving she heard a noise, stopped, and got out and saw Mr. Allen and his motorcycle on the street. Allen stated that he didn't think she was at fault in a hearing held in police court the day following the accident (at which the defendant was discharged for an alleged traffic violation). Before she swerved to the left, she glanced in her rear vision mirror, and saw nothing and as she swerved she applied her brakes. She didn't have time to give any signal and had to turn very suddenly to avoid the other automobile. She was seeking to avoid the collision with the automobile which pulled out from the curb and possible injury to her baby and the other people in her car.

"Plaintiff's case was submitted on primary negligence. The only negligence submitted to the jury under plaintiff's Instruction 1 was that the defendant suddenly, and without signalling or warning of her intention so to do, swerved her automobile to the left and caused the same to come into collision with the motorcycle being operated by the plaintiff. Plaintiff's instruction required the jury to find that defendant's act in swerving the automobile suddenly and without signalling or warning was negligence. As a defense, it was alleged in defendant's answer, under which the cause was tried, that plaintiff was guilty of contributory negligence in failing to keep a vigilant lookout, in operating his motorcycle too closely to the defendant's automobile, in failing to warn defendant of his intention to pass, or attempting to pass in an intersection and in failing to keep his motorcycle under reasonable and proper control.

"It was further alleged in the answer that plaintiff's injuries, if any, were caused by the action of a third party in suddenly driving without warning, an automobile from a position of safety along the south curbing of Independence Avenue directly into the path of defendant's car."

The motion for new trial was sustained on one ground only, and the only question briefed and presented to us is whether or not the trial court erred in granting a new trial because of error in the giving by him of defendant's Instruction "D", a sole cause instruction, as follows:

"The court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence an automobile operated by a third party was suddenly and without warning driven

and operated from a stationary position of safety at the south curbing of Independence avenue and directly in front of and immediately into the path and line of travel of the automobile being driven and operated by the defendant, and if you further find and believe that the act of said third party in so operating said automobile, if you so find, was the sole cause of whatever injuries, if any, which plaintiff sustained on said occasion and that said injuries, f any, were not due to any negligence on the part of the defendant in any of the particulars set out in other instructions herein, then and in that case your verdict will be for the defendant.''

Plaintiff contends that the action of the trial court in sustaining his motion for new trial was proper because Instruction ''D'' was confusing and misleading, and improperly authorized a verdict for defendant even if defendant's negligence concurred with that of a third party to cause plaintiff's injuries. In support of this contention he cites Gray v. Kurn, 137 S. W. (2d) 558, and Harrison v. Kansas City Electric Light Company, 93 S. W. 951. The Supreme Court there held that a defendant is liable in an action for damages if he is shown to have been negligent, and that such negligence contributed to the injury, even though such negligence alone would not have caused the injury but for the concurring negligence of a third party. No sole cause instruction was involved in either case. The law concerning concurring negligence, as there declared, seems to be the settled law of this State. However, plaintiff here says that his pleadings, evidence, and instruction were all based on the primary negligence of defendant and that he did not rely on concurrent negligence for recovery. He relied wholly on proof that defendant was guilty of primary negligence in suddenly swerving without warning. He contends that Instruction ''D'' authorized a verdict for defendant even though the jury might have believed that there was concurring negligence on the part of the third party and defendant, and that the collision would not have occurred but for same. Under defendant's Instruction ''D'' the jury could not find for defendant if they believed the accident was caused by the concurring negligence of defendant and the third party, because they were required to find that defendant was not guilty of *any* negligence as charged.

Plaintiff also cites and relies on State ex rel. v. Daues, 284 S. W. 463. There an instruction was offered and refused, which instruction directed a finding for defendant if the jury believed that the sole cause of the collision was the failure of defendant to have his truck equipped with skid chains. The action of the trial court in refusing to give said instruction was upheld because there was neither pleading nor evidence upon which to base such a sole cause instruction. However, in the case at bar, defendant pleaded that the act of the third party was the cause of plaintiff's injuries and offered evidence in support of her theory. Her evidence in that connection was not contradicted.

Plaintiff also contends that the evidence on behalf of defendant did not establish a situation that would justify the giving of *any* sole cause instruction, and that the instruction, as given, did not properly hypothesize the facts relied upon to excuse liability.

In support of the first of these contentions plaintiff says:

"It is quite true that if, under the circumstances, (shown in evidence) the jury should find that defendant was not negligent before or during or subsequent to the movement of the car operated by the third party, she would not be liable. Under the instruction here the jury were told that if they found that the act of the third party was the sole cause of plaintiff's injuries and that defendant was not negligent, they should find for defendant. . . .

"Under the admitted facts, there is no way on earth that the act of the third party here could be the sole *cause* of the accident. It might have been that defendant's acts performed in the emergency created by the acts of the third party were not negligent measured by the standard of ordinary care, but it is inescapable that the acts of defendant combined and contributed with the acts of the third party to suddenly swerve defendant's car into plaintiff's line of travel.

. . . .

"It is admitted the automobile driven by the third party never came into contact with the plaintiff at all, hence how could it cause injuries to plaintiff."

He says that defendant apparently attempted to prove that the act of the third party was the sole *proximate* cause of the collision but contends that, even so, it must appear that defendant's negligence did not concur therewith to cause the injuries and that proper instructions should have been given "to sustain this defense."

Plaintiff's position is that the situation here presented is not one in which *any* sole cause instruction, no matter how drawn or phrased, could properly have been given. Such a contention must rest on the theory that a sole cause instruction can never properly be given in any case where the issue submitted by plaintiff is one of primary negligence. Plaintiff's theory in this respect may be suspended from a superfine thread of logic but, if so, it is too fine to have been detected by the naked eyes of the jury and too weak to have misled or confused them. Be that as it may, there is precedent for the giving of a sole cause instruction in primary negligence cases. In Mendenhall v. Neyer, 149 S. W. (2d) 366, the only issue submitted was that of primary negligence. The Supreme Court, l. c. 372, 373, approved the instruction there given.

It is probably true that sole cause instructions are more often given in humanitarian cases than in any other class of litigation; but defendants are permitted, in all cases, to submit their theories of defense under properly drawn instructions (Borgstede v. Waldbauer, 88 S. W. (2d) 373, l. c. 377; Doherty v. St. Louis Butter Company, 98 S. W.

(2d) 742, l. c. 745); and it is not necessary that there be inserted therein "directions on some additional issue looking to a verdict for his adversary . . . " [Mendenhall v. Neyer, *supra*.]

It could be said of the situation in the Mendenhall case, as logically as it can be said here, that there could have been no collision because of the single act of the third party involved. There necessarily had to be a combination of circumstances and acts, of commissions of omissions, in order for a collision to have occurred in either case; but the mere fact that the third car, in the case at bar, did not collide with plaintiff's motorcycle cannot alter the fact that it could have been the sole *negligent* cause of the collision.

Plaintiff contends that, even if *any* sole cause instruction was permissible, Instruction "D" did not properly hypothesize the facts relied upon to excuse liability. Apparently the criticism is that the instruction does not hypothesize facts which, if found to be true, would necessarily exclude the possibility that defendant's negligence concurred with that of the third party to cause the collision.

In Shields v. Keller, 153 S. W. (2d) 60, l. c. 64, it is said: "We think a defendant does all that should be required of him if he properly hypothesizes facts (based on his evidence) showing a sole cause situation, requires a finding therefrom of sole cause and of his freedom from any negligence *charged against him.*" (Italics ours.)

In Branson v. Abernathy Furniture Company, 130 S. W. (2d) 562, l. c. 571, the Supreme Court held that Instruction "K" contained a proper "not due to the negligence of defendant" clause. The clause there approved is almost identical with the one before us. However, plaintiff says that the situation there was fundamentally different from that here presented because that was a humanitarian case whereas this is a primary negligence case. Judge HYDE's language in that case would indicate that the "not due clause" in this case (this being a primary negligence case, humanitarian negligence not being charged), is sufficient. [See Doherty v. St. Louis Butter Company, 98 S. W. (2d) 742, l. c. 746; Dilallo v. Lynch, 101 S. W. (2d) l. c. 13.]

In Mendenhall v. Neyer, 149 S. W. (2d) 366, l. c. 372, the court considered a sole cause instruction given on behalf of defendants in a primary negligence case. The instruction contained the following clause: ". . . and that defendants were not negligent in any particular submitted and defined in the court's instructions . . . " The "not due" clause there considered was held to be of the same legal effect as that ruled in Doherty v. St. Louis Butter Company, *supra*; and the instruction was held to be good.

In this case, where plaintiff did not plead concurrent negligence and offered no instruction thereon but based his whole case on the primary negligence of defendant, the sold cause instruction, as given

containing the "not due to any negligence" clause, was proper, in view of defendant's pleadings and of her uncontradicted testimony in support thereof.

The order granting a new trial should be reversed and the cause should be remanded with directions to reinstate the verdict of the jury and enter judgment thereon. *Boyer, C., concurs.*

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The order granting a new trial is reversed and the cause is remanded with directions to reinstate the verdict of the jury and enter judgment thereon. All concur.