228 S.W.2d 369 (1950)
NIX
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 27817.
St. Louis Court of Appeals. Missouri.
March 21, 1950.
Mattingly, Boas & Richards, St. Louis, Lloyd E. Boas and L. F. Stephens, St. Louis, for appellant.
Barnhart & Wood, St. Louis, C. V. Barnhart and Marvin S. Wood, St. Louis, for respondent.
ANDERSON, Presiding Judge.
This is an action by Lottie Nix, as plaintiff, against the defendant, St. Louis Public Service Company, to recover damages for personal injuries alleged by plaintiff to have been sustained on December 17, 1948, while a passenger on one of defendant's motorbusses. The trial below resulted in a verdict and judgment for defendant. Thereafter, the court sustained plaintiff's motion for new trial and, from this action of the court, defendant has appealed.
Plaintiff sought recovery under the res ipsa loquitur doctrine. After formal allegations and averments that plaintiff was a passenger the petition stated that: "the defendant negligently caused and permitted said motorbus, while in motion, to suddenly check its speed with an extraordinary, sudden, unusual, and violent jerk, whereby plaintiff was caused to be thrown forward and to strike and be struck by parts of the interior of said motorbus and other objects, whereby she was caused to suffer serious permanent injuries."
By its answer, after admitting its corporate existence and its possession and control of the motorbus in question, defendant denied the foregoing allegations and also denied the averments of the petition alleging that plaintiff had sustained personal injuries at the time and place mentioned.
Plaintiff boarded defendant's westbound motorbus at the northeast corner of the intersection of Seventh and Locust Streets, intending to ride west to Ninth Street, and there transfer to one of defendant's northbound busses. Plaintiff took a seat on the south side of the bus, a few seats behind the operator. After plaintiff was seated, the bus proceeded west on Locust Street. It stopped at Eighth Street to take on and discharge passengers, then it proceeded toward Ninth Street. Plaintiff testified that she then "skidded over in my seat like this, so when I raised up I could reach the cord. I ringed the bell, then I looked for Ninth Street to see how close I was to walk to the door. I always try to get to one door or the other as close as I can; and so quick, all at once, I don't know what happened, an unusual, oh, it was a terrible stop, terrific *370 jolt, it just jolted me plumb off my feet. * * * I was thrown on the floor on my left side; I went right in under the seat or struck something, what it was I don't knowit was done so quick."
On cross-examination, plaintiff testified:
"I started to get up to get off at Ninth Street and started to ring the bell. * * * I was standing when I fell.

* * * * * *
"Mr. Stephens: I would like to ask you just one other question. You said that you didn't see this truck that pulled in front of the bus. A. I did not. I didn't see nothing that happened."
William F. Grisser, the operator of the bus, testified on behalf of defendant. He stated that at the time in question the traveled portions of the streets were dry; that after discharging and taking on passengers at the regular stop at Eighth and Locust Streets he proceeded westward at about three or four miles an hour when a mail truck came out of a driveway on the south side of the street, directly in front of the bus; that he first saw this truck as he started to pull away from the bus zone; that the front end of that truckwhen he first observed that it might come into the path of his buswas about fifteen feet from him, headed north; and that the truck came east on Locust Street, then swung into the driveway and cut directly north across the streetcar track, preparatory to backing into the Post Office driveway. The witness further testified that he then:
"started applying my brakes, fanning my brakes and operating my bus to stop with normal speed as I possibly could.
"Q. About what speed were you traveling at that time? A. Three to four miles an hour.
"Q. About how far did you travel before you came to a stop? A. About fourteen feet.
"Q. Under the conditions of the streets and the operation of your car at that time, and consideration for the safety of your passengers, traveling at about three to four miles an hour, what is your best stopping distance? A. Three to four miles an hour I would say fourteen feet, thirteen to fourteen feet.
"Q. And you stopped within about fourteen feet, as I recall it? A. Yes, sir."
On cross-examination, the witness testified:
"Q. Mr. Grisser, would you mind telling me and the jury just what you mean when you say, `fanning my brakes'? A. Taking the slack out of your brakes so your brakes will get to the air tank right away.

* * * * * *
"Q. Well, were you kind of pumping them up? A. Yes, sir; taking the slack out of them.
"Q. Were your brakes in good condition? A. The best.
"Q. And with the brakes in the best of condition on that bus, is it still necessary to fan the brakes in order to come to a stop at three or four miles an hour? A. Yes, sir. You can set down on your brakes, take a chance it may not stop for you immediately, set the bus on its nose; but try to come to a normal stop, any bus operator will fan his brakes, and apply them as gently as he possibly can.

* * * * * *
"Q. Now, you brought your bus to a completely normal stop? A. As normal as I possibly could. It was a sudden stop, I may say, but not what you call a quick, jerky stop."
The witness further testified that he saw the mail truck coming east on Locust Street when his bus was stopped at Eighth Street; that the mail truck at that time was at Ninth Street; that he was then given a signal by the police officer to proceed, and the truck was then in the driveway by the Post Office; that the truck at that time had not started to swing out, but was moving at a speed of about ten or fifteen miles an hour coming into the driveway and starting to swing; that when he got the signal from the officer the truck was already in the driveway; that when the front end of the bus was approximately even with the west curb line of Eighth Street the mail truck started to go across the tracks and was out in Locust Street; *371 that it appeared to be going ten or fifteen miles per hour; that when the front end of the bus was about even with the west curb line of Eighth Street, the truck was across the eastbound tracks, but when it stopped in front of him it was across the westbound tracks; that when the front end of the bus was even with the west curb line of Eighth Street he did not realize from the appearance of the mail truck that the latter would move from the eastbound tracks into the path of the bus; that the bus was going three or four miles an hour at that time and that he then started to apply the brakes; that the bus was four or five feet from the mail truck when he brought it to a stop; and that the bus moved about fourteen feet in coming to a stop.
Mr. Grisser further testified, as follows:
"The Court: How far was the mail truck from you when it appeared to you as if it was necessary for you to do something to avoid the collision? A. I would say about twenty, twenty-five feet."
Margaret Briggs, a passenger on the bus, testified for the defendant. She stated that at the time in question she was seated on the driver's side of the bus, and that the bus was traveling three or four miles an hour at the time. She further testified:
"All of a sudden I saw a mail truck swing out from the driveway of the Post Office and right into the path of the bus; and the driver applied the brakes suddenly to avoid hitting the mail truck, and I glanced hurriedly out, and I saw this lady, I don't remember her name, thrown from her seat into the aisle.
"Q. And about how far was the front end of the bus from the mail truck at the time you saw this emergency arise? A. Pretty close. I don't knowbetween fifteen and fourteen feet, something like that, I guess."
Harry Gibbs testified for defendant that he got on the bus at Eighth Street and took a seat on the south side of the bus. He further testified that he "glanced out of the window; sometime after we started up my attention was caught by a Post Office truck coming out of the driveway there at the old Post Office. * * * It appeared to me that the Post Office truck would probably cross the path of the bus, and that if the bus didn't stop, the bus would hit it. Now, the bus stopped; I heard a thump, turned, and a lady was lying on the floor of the bus to my right; so I got up and looked at her and then took her by one arm, someone else had the other arm, and we helped her to her feet. * * * I saw the mail truck pull out, and then I felt a stop after I had seen the truck pull out."
Leonard Sharn, a passenger on the bus, testified for defendant that he was seated on the right side, about the middle of the bus. The sudden, abrupt stop of the bus was what called his attention to the mail truck. He stated that the front end of the bus was within ten feet of the truck and, according to his estimate, the bus was going about fifteen miles per hour. On cross-examination, Mr. Sharn testified that the sudden, abrupt stop is what arrested his attention, and at that time the mail truck was squarely in front of the bus and within ten feet of it.
Vera Johnson, a passenger on the bus, in testifying for defendant, stated that the bus stopped rather suddenly; that she saw a mail truck about ten or fifteen feet in front of the bus; that the mail truck was traveling in the same direction as the bus, and was ten or fifteen feet in front of the bus when she first saw it.
It appears from plaintiff's evidence that the driveway in question is approximately one hundred seven feet west of the west curb line of Eighth Street. It further appears that appellant's operator had been employed by defendant for five weeks prior to the happening of the accident, and had been operating a bus alone for six days prior to the accident.
Plaintiff requested, and the court gave, an instruction submitting the case to the jury under the res ipsa loquitur theory.
For the defendant, the court gave Instruction No. 3, which is as follows:
"The court instructs the jury that it was the duty of defendant to exercise the highest degree of care for the safety of plaintiff *372 and, likewise, to exercise the highest degree of care for the safety of the operator of the truck mentioned in the evidence.
"If you find and believe from the evidence at the time and place mentioned in the evidence a mail truck was driven in front of defendant's bus and that the operator of the bus was confronted with an emergency as the result thereof, if you so find, and that the operator of the bus made an effort to avoid striking the truck by bringing the bus to a stop, and if you further find and believe from the evidence that the operator of the bus could not anticipate that plaintiff, a passenger on the bus, might have been injured by the sudden stopping of the bus and if you believe that under the circumstances the operator of the bus was exercising the highest degree of care in the operation thereof, then in such event plaintiff is not entitled to recover and your verdict should be for defendant."
Plaintiff's motion for new trial was sustained by the court on assignment No. 9 thereof. Said assignment complained of the giving of Instruction No. 3 for the reason that said instruction was contrary to law, and the law under the evidence in the case; that said instruction commented upon, unduly emphasized, and gave undue prominence to the duty owed by defendant's operator to a third party, towit, the operator of the mail truck mentioned in evidence and, further, that said instruction erroneously declared the law in that said instruction ignored issues in the case and erroneously directed the jury to return a verdict for defendant if the defendant's operator only was not guilty of negligence in the operation of the bus, thereby erroneously limiting the scope of the legal presumption in plaintiff's favor, created by plaintiff's production in evidence of res ipsa facts.
The only issue on this appeal is whether Instruction No. 3 is erroneous for the reasons set out in the trial court's order.
Respondent contends, and the trial court held, that Instruction No. 3 was erroneous because it limited the field of permissible inferences to those with reference to the operation of the bus, whereas the res ipsa facts appearing in evidence called upon defendant for an explanation of its conduct not only as to the manner of the operation of the bus, but also with reference to its care in the maintenance thereof. If said instruction did so limit the scope of the permissible inference, plaintiff's complaint is well taken.
In Briscoe v. Metropolitan Street Ry. Co., 222 Mo. 104, 120 S.W. 1162, the court, in discussing the scope of the res ipsa loquitur rule in cases of this character, said: "The fact of a violent and unusual stop, with the consequent injury to plaintiff, is sufficient to require of the defendant an explanation of its conduct, both as to the safety of the conveyance and the track, and also as to the manner of the operation of the car or train. Wherever something unusual occurs in the operation of a public conveyance carrying passengers for hire, proof of such facts and a consequent injury to the passenger raises the presumption of negligence. The mere injury to the passenger is not sufficient, but proof of that fact, and further proof of an occurrence which is out of the ordinary, is sufficient to make a case under the rule of presumptive negligence." Briscoe v. Metropolitan Street Ry. Co., 222 Mo. 104, 114-115, 120 S.W. 1162, 1164.
In La Vigne v. St. Louis Public Service Co., Mo.Sup., 181 S.W.2d 541, the court, in condemning an instruction which limited the field of permissible inferences to the negligence of the motorman, said: "Under the res ipsa rule, plaintiff, in the present case, was not limited to the negligence of the motorman, unless the facts shown reasonably exclude any other hypothesis than that of his negligence, Charlton v. Lovelace et al., supra, 351 Mo. 364, 173 S.W.2d 13, loc. cit. 18(5), and, in view of plaintiff's evidence as to the sudden jolts, her bouncing up and down, the unusual and terrific lurch from side to side, etc., as appears, supra, it cannot be said that all other hypotheses are excluded. It is true that defendant's evidence tended to eliminate defective track, car, etc., but such was not conclusive, although uncontradicted." La Vigne v. St. Louis Public Service Co., Mo. Sup., 181 S.W.2d 541, 543-544.
*373 Other cases announcing the same rule, and condemning instructions limiting the scope of permissible inferences under the res ipsa loquitur rule, are: Scheipers v. Missouri Pac. R. Co., Mo.Sup., 298 S.W. 51; and Stofer v. Harvey et al., Mo.App., 204 S.W. 587.
Plaintiff's evidence did not show or indicate what caused the bus to be checked; nor did plaintiff limit the field of possible inferences by the manner of her submission of the case to the jury. By her Instruction No. 1, the jury were charged that if they found that plaintiff was a passenger and that the speed of the motorbus "was suddenly checked with an extraordinary, violent and unusual jerk," and that as a result thereof plaintiff was thrown and injured, "such facts aforesaid, if you believe them to be true, permit you to infer that the defendant was negligent, and you may so find, unless you find and believe from all the facts and circumstances in evidence that the aforesaid occurrence, if so, was not due to defendant's negligence." (Emphasis ours.)
We do not believe there is any merit in appellant's contention that plaintiff voluntarily limited the field of permissible inference to inferences of negligence in the operation of the bus. Nor do we believe that Durmeier v. St. Louis County Bus Co., Mo.Sup., 203 S.W.2d 445, is controlling, as contended by appellant. There the court found that plaintiff's evidence excluded any theory of negligence except that of the driver.
But appellant says the instruction merely presented defendant's theory of the case; that it hypothesized an affirmative factual situation which showed that the operator of the bus suddenly stopped the bus when confronted with an emergency brought about by a third person, and that the operator was at the time exercising the highest degree of care.
There is no doubt that defendant would have been entitled to submit this theory to the jury in a proper instruction. A defendant in a res ipsa loquitur case is entitled to show the circumstances under which the unusual occurrence took place, and have the jury find that the same was not due to the negligence of the defendant. Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001; Durmeier v. St. Louis County Bus Co., Mo.Sup., 203 S.W.2d 445. The same rule obtains in other types of negligence cases. Broderick v. Brennan et al., Mo.App., 170 S.W.2d 686; Borgstede v. Waldbauer, 337 Mo. 1205, 88 S.W.2d 373; Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461; Payne v. Stott, Mo.App., 181 S.W.2d 161; Allen v. Cascio, 238 Mo.App. 144, 176 S.W. 2d 552; Robb v. St. Louis Public Service Co., 352 Mo. 566, 178 S.W.2d 443.
Instruction No. 3 charged the jury that if they found that defendant's operator was confronted with an emergency as a result of a mail truck being driven in front of the bus, and that he brought the bus to a stop to avoid striking the truck, and that the operator of the bus could not anticipate that a passenger on the bus would be injured thereby, and that in operating the bus he exercised the highest degree of care, then in such event plaintiff was not entitled to recover. The instruction did not require a finding that the sudden stopping of the bus was due solely to the act of the truck driver. Nor did it require the jury to find that there was no negligence on the part of the defendant in respect to the other duties imposed upon it which the jury might reasonably find were violated and contributed to cause the plaintiff's injuries. It is the absence of this requirement which renders the instruction improper and takes the case out of the rule announced by Durmeier v. St. Louis County Bus Co., Mo.Sup., 203 S.W.2d 445, which case appellant relies on as justifying the giving of the instruction.
However, appellant says there is nothing in the instruction which could in any way be construed as preventing the jury from inferring that the defendant was negligent in some manner other than the negligence of the operator in bringing the bus to a stop. To this we cannot agree. Under this instruction the jury might believe that the truck driver negligently drove in front of the bus, and that at the time the operator, confronted with an emergency, *374 was not negligent in attempting to avoid a collision; and at the same time the jury might believe that the brakes were defective, in that they were not equalized, thus causing the bus to lurch to one side, with the result that plaintiff, who was standing, was thrown from between the seat into the aisle; or the jury might have found that the brakes locked in some manner due to improper maintenance. Yet the jury, notwithstanding their belief in defendant's negligence in the above respects, would be compelled to return a verdict for defendant under Instruction No. 3, although they believed defendant's negligence in maintaining the bus was a concurrent cause of plaintiff's injuries. Or, the jury might have found that the negligence of defendant in improperly maintaining the bus was the sole negligent cause of the plaintiff's injuries. Yet, under Instruction No. 3, the jury would be compelled to return a verdict for defendant. Clearly, the instruction was erroneous for the reasons assigned by the trial court in his order sustaining the motion for new trial. Harding v. Kansas City Public Service Co., Mo.App., 188 S.W. 2d 60; La Vigne v. St. Louis Public Service Co., Mo.Sup., 181 S.W.2d 541; Scheipers v. Missouri Pac. R. Co., Mo.Sup., 298 S.W. 51; and Stofer v. Harvey et al., Mo. App., 204 S.W. 587.
The other criticism of Instruction No. 3 is that it commented upon, unduly emphasized, and gave undue prominence to the duty owed by the defendant's operator to the driver of the mail truck. There is no merit to this contention. The instruction merely tells the jury that it was defendant's duty to exercise the highest degree of care for the safety of the plaintiff and for the safety of the truck driver. Certainly, it was the defendant's duty to exercise the highest degree of care for plaintiff's safety. Likewise, the law of Missouri imposes upon the operator of a motor vehicle the duty to exercise the highest degree of care for all persons using the streets. Since the instruction properly declared the law with respect to defendant's duties, it was not erroneous in this respect, as contended by respondent. Graber v. Wells, Mo.App., 7 S.W.2d 719.
The order appealed from is affirmed, and the cause is remanded for new trial.
HUGHES and McCULLEN, JJ., concur.