ELMER JOSEPH GORMAN v. ST. LOUIS MERCHANTS BRIDGE TERMINAL RAILWAY COMPANY, Appellant.—28 S. W. (2d) 1023.

Division One, June 3, 1930.

*J. L. Howell* and *Roy W. Rucker* for appellant.

328

*Charles P. Noell, Charles L. Moore* and *Hensley, Allen & Marsalek* for respondent.

RAGLAND, J.—This is an action for personal injuries alleged to have been sustained by plaintiff as the result of a collision between an automobile in which he was riding and a train of cars being run and operated by defendant. The collision occurred on the night of November 1, 1925, at the point where defendant's railroad crosses Bond Avenue in East St. Louis, Illinois. The trial of the cause in the circuit court resulted in a judgment for $25,000 in favor of plaintiff. From such judgment defendant prosecutes this appeal.

As appellant's chief contention here is that the trial court should have sustained its demurrer to the evidence, on the ground that plaintiff was guilty of contributory negligence as a matter of law, only the evidence most favorable to plaintiff with respect thereto need be stated with any degree of particularity.

In describing the place of collision only general directions will be given, they being sufficiently accurate for all purposes of the case.

Bond Avenue extends east and west; it is crossed at right angles by defendant's railroad, which at the point of crossing consists of two main tracks and which run north and south in and along 21st Street. At the time of the collision there were gates across Bond Avenue on each side of the crossing, on the arms of which were attached red lights. These gates were raised and lowered by a watchman stationed in a tower at the northwest corner of the intersection of Bond Avenue and 21st Street. The arms of the gates were maintained in an almost perpendicular position, except when a train was approaching or passing over the crossing. When a train approached, the watchman lowered the gates and started a bell in the tower ringing; he kept the gates down and continued to ring the bell until the train passed. This he did during the day and until twelve o'clock midnight. The gates and bell had been continuously so operated for a number of years prior to the collision, and defendant's custom and practice in this respect were

well known to plaintiff. He testified that he was relying upon their observance as he approached and started to drive over the crossing on the occasion in question.

About eleven P. M. on the date heretofore mentioned plaintiff was driving west on Bond Avenue approaching the railroad crossing on 21st Street. At the same time an engine and a drag of freight cars, moving north on the east track of the railroad, were likewise approaching the crossing. The engine was running backward, that is, the engine was facing the freight cars it was hauling and its tender was in advance of it. There was an electric headlight on the forward end of the tender, but owing to the darkness and fog it gave but a dim light. The train was moving at the rate of fifteen miles an hour. Plaintiff was traveling at about the same rate of speed, but slowed down as he approached the crossing. He noted that the gates were up and that the bell in the tower was not ringing. Notwithstanding, he brought his car to a stop with the front just even with the gates, ten feet from the tracks, looked in both directions and listened for an approaching train; neither seeing nor hearing one, he shifted the gears of his automobile and started forward, without again looking in either direction. As his car was entering upon the tracks he had a momentary vision of the train bearing down upon him; the crash of the collision followed immediately. His car was demolished and he sustained severe personal injuries.

Plaintiff was forty-two years of age; his senses of sight and hearing were normal; he was an experienced automobile driver; and he was perfectly familiar with the *locus in quo* and with the operation of railroad trains.

The vision toward the south along the railroad of one approaching the crossing from the east was obstructed by a two-story brick building at the southeast corner of the intersection of the two streets. Plaintiff testified that from the point where he stopped his car he could see south along the railroad about twenty-five feet, that is, in broad day light; when asked how far he could see on the night of the accident, he said: "Well, I couldn't see very far."

The train with which plaintiff collided consisted of an engine and sixty freight cars, but it was running on a level track. There was no other traffic moving in the vicinity at the time of the collision. Plaintiff was in a touring car, curtained on all sides, except on the left at the front, and its engine was running. He testified that he did not at any time hear the train, and did not see it except momentarily immediately preceding the collision.

Bond Avenue was a well paved through thoroughfare over which there was much travel both day and night. It had been for many years the invariable custom for locomotive engineers operating engines over defendant's railroad to keep the bells on their engines

continuously ringing as they approached the crossing over this street. There was other testimony in addition to that of plaintiff that on the occasion in question neither the engine bell was rung nor other warning given of the approach of the train. The crossing gates were not lowered; the bell in the tower was not rung; the watchman had gone.

Some of the facts as set out in the foregoing are at variance with defendant's evidence; the latter is omitted as it cannot be considered in ruling the demurrer.

The petition counted upon both common law and ordinance negligence. There were two assignments of common law negligence: First, the failure to observe the custom with respect to lowering the gates and ringing the bell in the tower upon the approach of a train; and, second, the failure "to ring the bell upon the locomotive engine or to sound the whistle or to give other warning signals of danger to persons traveling along and upon the said public highway." The cause was submitted to the jury, at plaintiff's instance, on these two assignments conjointly. The other assignments charged violation of certain ordinances of the city of East St. Louis. With respect to these the defendant's answer alleged that the ordinance referred to in the petition had been abrogated by the Public Utilities Act of the State of Illinois, as construed by its Supreme Court; and when the ordinances were offered in evidence by the plaintiff they were excluded on defendant's objection. Plaintiff thereupon abandoned all of its assignments of negligence based on the ordinances.

The answer also contained a plea of contributory negligence, but the defendant did not allege or attempt to prove the law of Illinois applicable to the common law negligence charged in the petition on which the cause was submitted.

Appellant has set forth categorically fourteen assignments of error. It has briefed three, based respectively on the trial court's actions: (1) in overruling the defendant's demurrer to the evidence; (2) in refusing its instructions withdrawing from the consideration of the jury the assignments of negligence grounded on ordinance violations, which had been abandoned by plaintiff; and (3) in giving an instruction which placed the burden of proof as to contributory negligence on the defendant. These will be considered in the order named.

I. In support of its first assignment appellant has cited Illinois cases as exemplifying the principles of law which it insists are controlling with respect thereto; the cause of action having arisen  in the State of Illinois. The law as so interpreted would be controlling if we were cognizant of it. It was neither pleaded nor proven, and we cannot take

judicial notice of it. This last seems an absurd thing to say when it is considered that the official reports of the courts of last resort of our sister state are lying here before us and that we frequently cite cases reported in them as persuasive authority in support of our own rulings. But until the Legislature sees fit to fully release us from this archaic rule (see Laws of 1927, p. 151), we are supposed to abide by it. Being in ignorance therefore of the common law as interpreted by the courts of Illinois, it not having been pleaded, we must apply it as expounded in this State. [Rashall v. Railroad, 249 Mo. 509, 155 S. W. 426; Lyons v. Railroad, 253 Mo. 143, 161 S. W. 726.]

Appellant seems to concede, as it must, that there was substantial evidence of its negligence: it presses its contention that its demurrer should have been sustained on the ground that plaintiff was guilty of contributory negligence as a matter of law. It insists that plaintiff's statement, that he stopped his automobile before entering upon the crossing, looked and listened, and neither saw nor heard the approaching train, is so incredible that it must be wholly disregarded. But plaintiff brought his car to a stop with the front at the crossing gate; naturally he would not have stopped, in the exercise of ordinary care, closer to the railroad track where his automobile would have been in danger of being caught by the lowering arms of the gate. From his position in his car where it had come to the stop he could see a distance of twenty-five feet along the track in the direction from which the train was approaching, had it been broad day light. But it was dark and foggy and the headlight was dim. After he looked, and while shifting his gears and again putting his car in motion, the train which was moving at the rate of twenty-two feet per second could easily have traveled fifty or seventy-five or even a hundred feet.

No bell was rung or whistle sounded or other warning given of the approaching train. Appellant suggests, however, that we must take judicial notice that a train of sixty cars moving at the rate of fifteen miles an hour, even along a level track, must make some noise. But even so, we have no way of knowing the extent of the noise made by the train in question or whether such noise was distinguishable from other noises, if any, under the conditions as they existed, or whether one seated as plaintiff was in a closed car with its engine running could have heard it and known that it was made by an approaching train, even though listening attentively.

All these circumstances considered, it cannot be said that to look was to see, and to listen was to hear the approaching train.

There were, however, other circumstances which must be considered in determining whether plaintiff was in the exercise of the requisite degree of care for his own protection. The open gates

and the silent bell in the watchman's tower were essentially an assurance to him that no danger need be feared from an approaching train. But appellant insists that plaintiff was not relying on them, or else he would not have stopped and looked and listened, as he said he did, before attempting to cross. On the contrary a person of prudence and caution would not have relied *solely* upon the performance by the railroad company of the duty it had assumed in the premises: he would have used his own senses, but no doubt would have been less vigilant than if the implied assurance that the crossing could be made in safety had not existed. The rule in gate-crossing cases is well stated in Yonkers v. Railroad, 182 Mo. App. 558, 568, 168 S. W. 650:

"The fact that the gates were maintained, and that they were open at this particular time, necessarily constituted an invitation to one to pass upon or over the defendant's tracks. It was essentially an assurance to plaintiff, driving upon the street, that no danger need be feared from an approaching train. While it may be true that she was not so far relieved of the duty to look and listen that she could go blindly and heedlessly upon the tracks, relying wholly upon the fact that the gates were not closed, nevertheless her duty to look and listen is to be regarded as modified, to a great extent at least, by the fact that the open gates constituted an invitation to go upon the tracks and an assurance of safety on so doing."

The question of plaintiff's contributory negligence was clearly one for the jury.

II. The withdrawal instructions offered by defendant and refused by the court related to assignments of negligence based on violations of various ordinances. As already stated, the court had excluded the ordinances when offered in evidence and the plaintiff had thereupon abandoned the charges of negligence bottomed on them. By such abandonment they went as completely out of the case as though they had never been pleaded. What was the necessity for telling the jury so? Appellant suggests that in the circuit courts of the city of St. Louis it is the practice to read the pleadings to the jury. Such practice, wherever it occurs, is not to be commended. The pleadings are addressed to the court and not the jury. The jury can get no enlightenment as to the particular issues they are called upon to try from hearing the pleadings read. And so we have repeatedly held that an instruction which refers the jury to the pleadings for the issues is erroneous. Under our system of procedure the only knowledge that a jury can properly have as to the issues of fact which they are to determine they must get from the written instructions of the court. In the instant case the issues were clearly defined in

the instructions; further instructions telling the jury what was not in issue (permissible, possibly, under some circumstances) would not only have been wholly irrelevant, but would have tended to confuse; their refusal was not error.

III. Appellant's contention that the instruction placing the burden of proof as to contributory negligence on defendant was erroneous is based on what it claims to be the rule of decision in Illinois. For the reasons heretofore stated such rule, if any, is without influence. The instruction conforms to our own precedents, and that is all that need be said with respect to it.

In connection with defendant's failure to plead the Illinois law, it may be added that counsel who briefed and argued the case for appellant in this court do not appear from the record to have participated in any way in the trial below.

The record disclosing no error materially affecting the merits of the action, the judgment should be affirmed. It is so ordered. All concur.