JOHN RINDERKNECHT, Respondent, v. GUY A. THOMPSON, Trustee and Receiver for the MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Appellant, No. 41040—220 S. W. (2d) 69.

Division Two, April 11, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, May 9, 1949.

22

*Thomas J. Cole* and *Ragland, Otto, Potter & Embry* for appellant.

24

*Vincent M. Flynn, Charles E. Gray* and *Chelsea O. Inman* for respondent.

28

TIPTON, P. J.—In the circuit court of the city of St. Louis the respondent recovered a judgment in the sum of $20,000 against the appellant for personal injuries that the respondent received in a collision between a milk truck he was driving and an engine operated by the appellant. This collision occurred at the intersection of Big

Bend Road and the Missouri Pacific Railroad tracks in St. Louis County.

The appellant's first assignment of error is that the respondent's "petition fails to state a claim upon which relief can be granted, because: (A) It does not allege that the appellant knew or, in the exercise of ordinary care, should have known that the crossing signal mentioned therein would not operate at the time therein referred to."

Briefly, respondent's petition alleged that the appellant had installed an electric device at the northeast corner of the intersection of Big Bend Road and the tracks of the Missouri Pacific Railroad Company and that this signal was so designed as to flash a red warning light when locomotives were approaching this intersection. The petition further states that as respondent was driving and operating his truck on Big Bend Road onto the railroad tracks on June 29, 1945, the signal device did not flash or display a red light at any time prior to the time the truck driven by respondent was struck by appellant's locomotive. The negligence charged was that appellant knew, or in the exercise of ordinary care could have known, that persons operating motor vehicles on Big Bend Road would rely on the appellant's custom of so operating the signal device, that "nonetheless the defendant (appellant), through his agents and servants, negligently failed to exercise ordinary care in the premises, and to have the said device and signal in such condition that it would flash a red warning light when the locomotive which struck the truck which plaintiff (respondent) was so operating and driving approached and came on the said East Big Bend Road, as aforesaid."

The above quoted part of respondent's petition was a charge of general negligence which is good after verdict, in the absence of attack, even though it is indeed nebulous in its allegation of negligence. Holtz v. Daniel Hamm Drayage Co., 357 Mo. 538, 209 S. W. 2d 883. The appellant did not attack the petition by motion or ask that it be made more definite and certain. In fact, the appellant did not object to the evidence that tended to prove that appellant knew that the signal device was not working. Under these facts there is no merit in appellant's contention. Mo. R. S. A., Section 847.82.

The appellant's next attack upon respondent's petition is that "the petition, in necessary effect, pleads reliance by respondent solely on the crossing signal to warn him of approaching trains." It is the appellant's theory that if respondent solely relied upon the crossing signal to warn him of the approach of the train then he would be guilty of contributory negligence as a matter of law. As above stated, the respondent in his petition charged that the appellant "negligently failed to exercise ordinary care in the premises." This is a very general charge of negligence. We are unable to agree with appellant that respondent's petition is susceptible of such construction.

The appellant's second assignment of error is that "the trial court erred in submitting the case to the jury and in not sustaining appellant's motion for a directed verdict at the close of all of the evidence."

The verbatim details of this evidence would serve no useful purpose. The evidence shows maintenance of the signaling device at the northeast part of the intersection of Big Bend Road and the Missouri Pacific tracks. The respondent ▮▮▮ testified that this crossing signal did not function as he approached the crossing. However, the mere fact that there is evidence that the signal device did not function is not enough to show negligence on the part of the appellant. There must be a showing either that the appellant knew the signal did not function or that it had been out of repair long enough before the collision to impute knowledge to the appellant. 45 C. J., p. 660, section 28. Both appellant and respondent concede this to be the law.

As to whether the appellant had knowledge that the signal device was out of order prior to the collision, we must review the evidence most favorable to respondent. The engineer of the locomotive that struck respondent's truck testified that he was going to take the freight train from St. Louis to Jefferson City; that from St. Louis to near the intersection of Big Bend Road and the railroad tracks there was a helper engine attached to his train; that when his train reached a point near the intersection the helper engine was disconnected from this train and helped move a work train; that his locomotive did not move for about 45 minutes; that he decided to cut his engine loose from the cars and go get some water as his water was too low to run to Washington, Missouri; that during this interval he observed the flasher light device working through a peek hole; that he directed the brakeman to direct traffic over the crossing; that he informed this brakeman that the locomotive was going to proceed across the intersection and he instructed the brakeman to watch the traffic as an "extra precaution" so as to prevent traffic from crossing the tracks as he was moving the engine; and that he saw this brakeman signal the respondent not to cross the railroad tracks.

The brakeman testified that the locomotive was standing about 15 feet south of the intersection and when the engineer told him "he was going to pull the engine up" that he then started to flag the traffic so that it would not cross the tracks; that he first observed the respondent approaching the intersection when he was approximately 200 to 250 feet east of the crossing, at which time the respondent was traveling about 20 miles an hour; that he tried to prevent the respondent from crossing the tracks by signaling to him but was unable to do so; and that the flasher light signals were working.

The respondent testified that as he approached the intersection he saw a man sitting on a box on the northeast corner of the intersection near the signal device who later turned out to be the brakeman, and

at no time did this brakeman give any signal or warning of the approach of the locomotive and that the bell or whistle on the locomotive did not sound.

We think it is a fair inference the jury could draw that the signal device was not working and that this fact was known to the train crew. If the signal was working at the time the locomotive started to cross Big Bend Road, why was it necessary to have the brakeman warn the traffic by hand? At least, the jury could draw that inference. Since the train crew was at the crossing the jury could draw the inference that the appellant's servants were negligent in not providing a substitute warning for the defective warning device. Therefore, the court properly submitted the case to the jury. Dehn v. Thompson, 181 S. W. 2d 171; Homan v. Mo. Pac. R. Co., 334 Mo. 61, 64 S. W. 2d 617; Toeneboehn v. St. Louis-San Francisco R. Co., 317 Mo. 1096, 298 S. W. 795.

█ Also, appellant contends that respondent's own evidence shows that he was guilty of contributory negligence as a matter of law and, therefore, the case should not have gone to the jury.

The appellant contends that respondent's own evidence was to the effect that he relied solely on the crossing signal to warn him. A reading of the respondent's entire testimony refutes this statement. It is true respondent testified that he relied upon the signal device, but not entirely, as he tried to observe the traffic and he was watching the crossing. There was a very large embankment on the south side of the highway close to the tracks, and two large fuel tanks, and he was unable to see to the south until he passed these tanks. The first time he saw the locomotive, which was just south of the concrete pavement █ of the highway, was when he was about 25 feet from the track and was traveling about 20 miles an hour. He tried to stop but was unable to do so. He saw no flashing of lights from the signal device at any time as he approached the tracks. The brakeman did not flag him down and he did not hear the engine bell or whistle of the locomotive.

We think these facts come squarely within the ruling of our recent banc case of Rhineberger v. Thompson, 356 Mo. 520, 202 S. W. 2d 64, l.c. 68, wherein we said:

"It was plaintiff's duty, in approaching the crossing, to lend an attentive eye and ear to the signaling device defendant had installed to warn highway travelers of passing trains. Perkins v. Kansas City Southern R. Co., supra. The unlit, silent, inactive signaling device impliedly assured the highway traveler, plaintiff, the crossing could be made in safety. While one in the exercise of due care would not rely solely upon the performance of defendant of the duty assumed in erecting the signaling device and would use his own senses, yet, a person, although exercising due care, doubtless would feel more secure and would be less vigilant than if defendant's implied assur-

ance that the crossing could be made in safety had not existed. Perkins v. Kansas City Southern R. Co., supra; Gorman v. St. Louis Merchants' Bridge Terminal R. Co., 325 Mo. 326, 28 S. W. 2d 1023; Bachman v. Quincy, O. & K. C. R. Co., 310 Mo. 48, 274 S. W. 764; Sisk v. Chicago, B. & Q. R. Co., Mo. App., 67 S. W. 2d 830.''

The appellant makes several assignments of error in regard to the giving of instruction No. 1, given at the request of the respondent. That instruction reads as follows:

''The Court instructs the jury that defendant installed and maintained an electric crossing signal at the intersection mentioned in the evidence of its track and Big Bend Road, an open public highway in the County of St. Louis, to warn of the approach of trains on its said track; and if you find and believe from the evidence that the plaintiff knew of and relied upon said signal to warn him of the approach of any train or trains on defendant's said track at said crossing, you are then instructed that it became and was the duty of the defendant to use reasonable care to properly maintain said signal so that said signal would duly warn plaintiff of the approach of any train or trains on defendant's said track at said crossing, and that plaintiff had a right to rely upon no train being in close proximity to said crossing unless plaintiff knew that said train was approaching or by the exercise of the highest degree of care could so have known.

''You are further instructed that on the 29th day of June, 1945, plaintiff was driving a motor truck in a westerly direction on Big Bend Road in said County and across said track and was struck by a locomotive operated by defendant through his agents and servants; and you are further instructed that if you find and believe from the evidence that plaintiff was in the exercise of the highest degree of care and if you further find that plaintiff was injured as a direct result of said locomotive striking said motor truck, and if you further find and believe from the evidence that the defendant negligently and carelessly permitted said crossing signal to be and remain out of order and repair and that the same would not operate; and if you find that defendant knew, or in the exercise of ordinary care should have known, prior to collision, that said crossing signal was out of order, if you so find, and in the exercise of ordinary care, prior to the collision, could have warned plaintiff, and if you further find that defendant failed to warn plaintiff in the exercise of ordinary care; and if you further find that plaintiff knew that defendant had installed and had been maintaining said signal and relied thereon, and that plaintiff had no knowledge that said crossing signal was out of order and would not operate, if you so find, and if you further find that said crossing signal was not operating or giving warning to the plaintiff of the approach of defendant's said locomotive; and if you further find that, as a direct result of said crossing signal not operating, if you so find, the collision in question took place and that plaintiff was injured, then **[74]** you

should find in favor of the plaintiff, John Rinderknecht and against the defendant, Guy A. Thompson, Trustee of the Missouri Pacific Railroad Company, a Corporation.''

The respondent made a submissible case for the jury when he showed that he was in the exercise of the highest degree of care; that he was injured as a direct result of the locomotive striking the truck; that he knew appellant had installed and maintained the signal device and he was accustomed to rely thereon; that he had no knowledge that the crossing signal was out of order and would not operate; that the crossing signal was not operating or giving warning to him of the approach of the appellant's locomotive at the time and place in question; that appellant knew or in the exercise of ordinary care should have known, prior to the collision, that the crossing signal was out of order, and that in the exercise of ordinary care prior to the collision could have warned respondent; that appellant failed to exercise ordinary care to warn the respondent; and that as a direct result of such negligence the collision took place and respondent was injured. Bachman v. Quincy, O. & K. C. R. Co., supra; Dehn v. Thompson, supra; Rhineberger v. Thompson, supra.

We think that instruction No. 1 set out these requirements and we have already held there was sufficient evidence to support these above requirements with one additional fact and that is that the respondent had crossed this crossing twice a day, six days a week, for years and had and did rely on the crossing signal. Moreover, we think a mere reading of this instruction does not show it to be repetitious, argumentative or confusing. Such assignment is without merit.

The appellant contends that the instruction is broader than the petition. We have already discussed the fact that the petition charged general negligence, but since no objection to the evidence was made the petition will be considered as amended to conform to the proof.

There are two grounds of negligence in this instruction. One is that appellant knew or by the exercise of ordinary care could have known that the signal flasher was not operating and could have warned respondent but failed to do so. We have already held that there was sufficient evidence to submit this question to the jury.

But we agree with the appellant that there was no evidence to support the charge of negligence in this instruction, which says, ''and if you further find and believe from the evidence that the defendant negligently and carelessly permitted said crossing signal to be and remain out of order and repair and that the same would not operate.'' There is no evidence showing how long the signal was out of order and would not operate, let alone that it was out of order long enough for the appellant to have repaired the same. But since these two grounds of negligence were submitted in the conjunctive, this is not reversible error. Monsour v. Excelsior Tobacco Co., 115

34

S. W. 2d 219; Tash v. St. Louis-San Francisco Ry. Co., 335 Mo. 1148, 76 S. W. 2d 690; Berry v. Baltimore and Ohio R. Co., 43 S. W. 2d 782.

The appellant says that the use of the word "duly" in the clause, "so that said signal would duly warn plaintiff of the approach of any train or trains," made appellant a guarantor that the signal would warn the respondent. The word "duly" means "in a due manner, time or degree; as it (anything) ought to be; properly; . . . sufficiently." Webster's International Dictionary (Unabridged). We think the appellant's contention is without merit.

A mere reading of this instruction shows that it properly requires the jury to find that the respondent was in the exercise of the highest degree of care. We therefore find no reversible error in this instruction.

The appellant next contends that instruction No. 10 is erroneous because it "submitted as an element of damage the question of future losses by reason of loss of earning capacity, although no such element of damage was pleaded." The petition stated that all of respondent's bodily injuries, nervous impairments and derangements are permanent, and that as a direct [75] result of these injuries he has lost time from his work as a truck driver. An allegation that the injuries are permanent is sufficient allegation upon which to base a finding of future loss of earning capacity. Kemper v. Gluck, 327 Mo. 733, 39 S. W. 2d 330; Shimmin v. C. & S. Mining Co., 187 S. W. 76.

The appellant's last assignment is that the verdict is excessive. The test is whether or not the size of the verdict is such as to shock the conscience of the court. We must accept the evidence on this question that is most favorable to the respondent.

The last day that respondent worked for his employer, the Pevely Dairy Company, was the date of the accident, June 29, 1945. The record of that company shows he was off 69 days between January 1, 1945 and June 29, 1945; that his gross weekly earning when he worked was $53.50; that he was a naval veteran and drew veterans' compensation from 1922 to 1933; that he had continuously tried to be reinstated until some time in 1942; and that after the accident he walked a half mile and then drove his car to his home. A physician examined him that day and found a slight contusion on his knee and several small scratches and abrasions on his wrist. The x-ray did not disclose any fracture or dislocation of any vertebrae, but the medical evidence was that he had "a tenderness over both of the sacro-iliacs and particularly the right." Also, the medical testimony shows that he was unable to do any strenuous manual labor, such as lifting milk cases; that this was partly due to a "lesion, which we call—it is congenital, that is, he was born with the lesion itself—" and partly due to injuries he received. The evidence showed that respondent had done no work from the date of the injury until February 9, 1948, the

date this trial started, which was approximately 131 weeks, even though he was advised by his physician to do some light work.

We think that under the evidence in this record this verdict was excessive by at least $5,000.00. If the respondent will enter a remittitur of $5,000.00 within ten days from the date of the adoption of this opinion, then the judgment will be affirmed as of the date of the verdict; otherwise, the judgment of the trial court will be reversed and remanded. All concur.