241 S.W.2d 60 (1951)
GROMOWSKY
v.
INGERSOL et al.
No. 21550.
Kansas City Court of Appeals. Missouri.
June 4, 1951.
*61 Price Shoemaker, Elmer E. Reital and Donald Pierce, St. Joseph, for appellants.
Richard W. Mason, Maurice Pope, St. Joseph, for respondent.
BROADDUS, Presiding Judge.
This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $4,500 and defendants appeal.
In 1949 and prior thereto defendants operated the Lake Contrary Amusement Park in Buchanan County, Missouri. As a part of the Amusement Park and as one of the amusement devices was what is referred to in the evidence as an "airplane ride." These "airplanes" were attached to heavy wire cables which were suspended from a tower approximately sixty feet in height. As the motor to this "ride" starts the "swings" or "airplanes" are caused to swing out from the base of the tower. As the momentum of the machine increases, the farther out from the tower and higher from the ground these "swings" go, until at the peak of the speed they reach a height of about fifteen feet above ground and revolve rapidly around the tower.
Plaintiff, a girl, was eleven years of age at the time of the trial in May 1950. On June 17, 1949, plaintiff and a girl companion, Dixie Hoffman, were riding in this "airplane ride" when a cable broke and fell without any warning; as it fell one end of the cable struck the "airplane" in which the girls were seated. Plaintiff testified "Well, we got in the seat and the cable broke and a great big iron bar came down and hit my back." She testified she had ridden the "airplane" before, and that nothing like what happened on the date of the accident had ever occurred before.
Dixie Hoffman testified, "we was on the ride and we was going pretty high and pretty soon we heard something, and then we started swinging back and forth and we hit that building, and then that iron bar came down," and struck plaintiff on the back. Dixie further testified that she had ridden in the "airplane" before, and nothing unusual had occurred. Both girls had paid the required fare.
Defendants' employee, Henry A. Mattice, testified that he was inside the building when the "airplane" started to go up and "I heard something snap and I immediately turned off the current and then I heard this swishing noise which was the cable. It was coming down."
Defendants' proof with respect to the maintenance and care of the amusement device, by witness William K. Bowers, is as follows:
"Q. Tell the jury just what work you do? A. In other words I kind of look over the rides of a morning, kind of see that they are all in pretty good shape, in shape ready to go.
"Q. What did you have to do with that ride in the summer of `48 and '49? A. Well, I used to kinda look after it. I would go up different times and look it all over.
"Q. Just tell the jury what you mean by `look it over.' A. Well, in other words, just check it. In other words, I would check maybe your cables * * *.
"Q. How often would you do that? A. Well now, it might go some days, * * *.
"Q. Did you examine that cable? A. No, I never examined it, I just replaced it with a new one.
"Q. Do you know what caused it to break? A. I do not.
"Q. Before the 17th day of June, 1949, how long had it been before you made an inspection of this particular cable at the place where the break was? A. I couldn't say exactly.
"Q. Do you know how long the cable had been there? Had it been there all winter? A. Been there all winter, yes."
Defendants' first contention is that plaintiff's instruction No. 1 is erroneous because it permitted a recovery on the theory of res ipsa loquitur although the petition charges specific negligence. The petition alleged:
"Plaintiff further states that said amusement devices and amusement rides, and the *62 one on which plaintiff was riding as a passenger as hereinafter set out, were owned, operated and supervised, controlled, maintained and repaired by the defendants, all of which were placed in and at the premises of defendants, and that said amusement devices and amusement rides were under the sole care and operation, supervision, control and maintenance of said defendants, their agents and servants and were by said defendants exclusively kept and repaired.
"The said defendants did on or about the 17th day of June, 1949, carelessly and negligently cause, suffer and permit its airplane amusement ride and the cables and parts thereof, while plaintiff was a farepaying passenger thereon, to break and fail to operate properly, * * *.
"Plaintiff further states that at said time she had no knowledge of the mechanism or the condition, or the operation, of said amusement device on which she was a passenger, and had no control in any manner whatsoever over the said mechanism, or its operation, * * *."
In the case of Kuether v. Kansas City Light & Power Co., 220 Mo.App. 452, 276 S.W. 105, 107, decided by this court, the negligence charged in the petition was: "The defendant negligently caused and permitted an object to fall from one of its poles, which plaintiff is informed and believes to be a glass insulator; that said object struck this plaintiff on the back of her right hand and wrist with great force and violence."
It can readily be seen that the charge of negligence in that case is almost identical with the allegation in the instant case. We held the charge was within the doctrine of res ipsa loquitur, and said: "It must be conceded that this is a proper pleading as a general allegation of negligence. The petition does not charge, nor does it attempt to charge specific acts of negligence." The Kuether opinion cites many cases in support of its holding. This contention is without merit.
Defendants next contend that their motion for a directed verdict should have been sustained.
In the much cited case of Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, 1004, it is said: "The principal difference between a res ipsa loquitur case and a specific negligence case would seem to be that the very basis of liability, the existence of some negligence, may be shown by a particular kind of circumstantial evidence, namely, an unusual occurrence of a character which ordinarily results only from negligence (both in pleading and proof), and from which, therefore, negligence is a reasonable inference; while in a specific negligence case the careless acts or omissions which constitute negligence must be stated and proven. In other words, in a res ipsa [loquitur] case the ultimate fact, some kind of negligence is inferred without any evidential facts except the unusual occurrence itself."
And this court in Brown v. Winnwood Amusement Co., 225 Mo.App. 1180, 34 S.W. 2d 149, 153, a res ipsa loquitur case, used the following language: "While it is true that defendants showed that there was nothing wrong with the device, the weight of this testimony was for the consideration of the jury although plaintiff offered no evidence on this point save of the unusual occurrence."
The facts in the case at bar justify a reasonable inference of negligence and the trial court properly sent the case to the jury. The cases of Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S.W.2d 702 and Grimmeissen v. Walgreen Drug Stores, Inc., Mo.App., 229 S.W.2d 593, relied upon by defendants are distinguishable from the instant case on the facts and are not in point.
Defendants also contend that plaintiff's instruction No. 3 is erroneous and misleading because it presents a shaded and colorful description of the degree of care; that it overemphasizes defendants' duty, and gives the jury a roving commission.
The first part of the instruction informs the jury "that it is admitted by the defendants that the seaplane ride on which plaintiff was a passenger, * * * was owned and operated by the defendants, *63 * * * and that on said date said seaplane ride was under the sole and exclusive care, operation, supervision, control and maintenance of the defendants." This was set forth in plaintiff's petition and admitted in defendants' answer.
Said instruction next informs the jury "that it was the duty of the defendants to manage and operate its said seaplane ride with the highest degree of care of a very prudent person engaged in like business, in view of all the facts and circumstances."
In Brown v. Winnwood Amusement Co., supra, we said, 34 S.W.2d, loc.cit. 152: "There have been several cases before the higher courts of this country involving devices similar to the one in the case at bar and, while the courts have been slow in holding that the operator of such devices is technically a common carrier and that all the rules governing such carriers are applicable to him, they do hold that the rule in reference to the degree of care required of a common carrier applies to the operation of such devices;"
In the case of Stauffer v. Metropolitan St. Ry. Co., 243 Mo. 305, 316, 147 S.W. 1032, 1035, the court said, in describing such degree of care: "To put it in the language of some of the cases: `A high degree of care'; `the utmost degree of care of very prudent persons'; `the greatest possible care and diligence'; `great care'; `such care as a very prudent person would exercise under similar circumstances'; `the highest degree of care that can be reasonably expected of prudent, skillful and experienced persons'; `the highest degree of care practicable among prudent and skillful men in that business'".
Therefore, the continuation of said instruction No. 3, stating "and to exercise such practicable degree of care of a very prudent person as would be commensurate with the danger, if any, to which you may believe from the evidence any of the passengers on said seaplane ride were exposed at such time, and that defendants are liable to plaintiff for any omission of such care" is clearly within the purview of the Stauffer case and the many other cases.
The remaining charge in said instruction complained of "that defendants are liable for slight negligence in the management and operation thereof, if any, if such omission or slight negligence resulted in injury to plaintiff, if any," does not place any greater burden on defendants.
In the case of Sweeney v. Kansas City Cable Ry. Co., 150 Mo. 385, 393, 51 S.W. 682, instruction No. 3 set forth therein, is substantially the same as the instruction in the case at bar. The court in commenting on said instruction said, 150 Mo., loc. cit 401, 51 S.W., loc. cit. 687: "The instruction under comment is substantially the same as those passed upon in the cases cited. The fact that in it the jury were told that defendant was liable if its servants were guilty of even slight negligence was nothing more than telling them that the law required of it the highest degree of care, and did not vitiate it."
In our opinion the trial court committed no error in giving the instruction.
Defendants also claim that the verdict is excessive. In the determination of this question our Supreme Court has laid down the following rule: "The test is whether or not the size of the verdict is such as to shock the conscience of the court. We must accept the evidence on this question that is most favorable to the respondent." Rinderknecht v. Thompson, 359 Mo. 21, 220 S.W.2d 69, loc. cit. 75.
Plaintiff testified that when she got home the night of the injury there was a big bump on her back; that her back was aching terribly; that she was in bed for some time; that from the date of the injury to the time of the trial, if she ran, played too long, or rode her bicycle, her back started aching; that she gets headaches quite often; that she missed quite a few days from school; that when she jumps rope her back aches and she gets headaches; and that when she stands too long her back starts aching.
Dr. Robert Conrad testified that at the time of his examination of plaintiff a short time before the trial he found her suffering *64 from pain in the lower middle back, muscle tension of the neck and nervousness; that on the left side between the last rib and the crest of the pelvis there was "a break in the curve, a very definite mass, approximately two inches in length by one inch in width;" that such condition would cause pain at the point where the backbone joins the pelvis; that such condition was a permanent one; that it would result in "continued and worsening pain as she gets older," affecting her health and her ability to do things.
Dr. Conrad further testified that X-rays taken of plaintiff disclosed that there was a very definite tilting of the vertebra; that at the articular facet between the last lumbar vertebra and the first sacral segment there was a very definite wedging of the articular facet. That it permits the pelvis to tip forward.
Dr. Joseph L. Fisher, an X-ray specialist, testified that the X-ray pictures of plaintiff's back disclosed "tilting" of the vertebra, and that "this disturbance in relationship to these bones never gets better; always gets worse as the patient grows older and is subjected to strain, work or lifting."
There is no accurate scale for measuring the money value of the damages sustained in a personal injury case. Many decisions say this, and that each case is to be considered on its own peculiar facts. When the evidence is viewed in a light most favorable to plaintiff, with the additional fact that the verdict bears the approval of an able trial judge, we cannot say that it is excessive.
Finally defendants say that the trial court was guilty of an abuse of discretion in failing to grant them a new trial because of newly discovered evidence. We do not think so. Numerous decisions in this state hold that motions for new trial based on this ground are not favored, and such motions should be examined with caution. Defendants did not make the showing required by our authorities. Lynch v. Baldwin, Mo.Sup., 117 S.W.2d 273, loc. cit. 276.
Finding no error, the judgment is affirmed. All concur.