Pearl STATLER (Plaintiff), Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation (Defendant), Appellant.

No. 29525.

St. Louis Court of Appeals.

Missouri.

April 2, 1957.

Robert E. Staed, St. Louis, Lloyd E. Boas, St. Louis, of counsel, for appellant.

James E. Hullverson and Hullverson, Richardson, Hullverson & Jeans, St. Louis, for respondent.

MATTHES, Judge.

This is an action for damages for personal injuries sustained by plaintiff while she was a passenger on the defendant's Cass Avenue bus, in the City of St. Louis, Missouri. The case was submitted under the res ipsa loquitur doctrine. From the judgment for $3,500 entered on the jury verdict defendant has appealed. Defendant contends that prejudicial error was committed in giving instruction No. 5 and in refusing instruction "A". It is also asserted that the verdict is grossly excessive.

On the morning of August 29, 1954, plaintiff boarded one of the defendant's eastbound buses at Newstead and St. Louis Avenues, in the City of St. Louis, Missouri, for the purpose of being transported to her place of employment, which was a building at 722 Chestnut Street. She occupied a seat next to the aisle. The bus proceeded eastwardly on Carr Street until it reached Eighth Street, when a "terrific jerk or lurch" occurred. In plaintiff's words, "It was very terrific and so sudden." Plaintiff was unable to state whether the bus was making a right turn to proceed southwardly on Eighth Street at the time of the sudden jerk. Neither could she testify as to the speed of the vehicle except to say, "It wasn't fast." The unusual movement of the bus threw plaintiff to the aisle floor where

she landed in a sitting position. With assistance plaintiff returned to the seat. Just prior to leaving the bus at Chestnut Street plaintiff informed the operator that she "was the lady that was sitting on the floor back there", and asked for, but did not receive, the bus driver's name and number.

Roy Myers was the operator of the motor bus in question. His version of the events harmonized with plaintiff's testimony in some respects, and conflicted therewith in others. He conceded that there was an unusual movement of the vehicle that he was operating, which he explained in this manner: As the bus approached Eighth Street traveling eastwardly on Carr, he observed a truck parked on the south side of Carr, facing in an eastwardly direction. Because of the presence of the truck and its close proximity to Eighth Street, Myers was forced to swing the bus to the opposite side of Carr in order to negotiate the right turn into Eighth Street. While in the process of making the turn, the "rear end of the bus slid approximately six to eight feet to the left * * * striking something rough, a rough place in the street". Myers testified that the street was wet from a misting rain, whereas the plaintiff's testimony was that the street was dry. Myers' estimate of the speed of the bus at the time it was turning was from three to five miles per hour, which coincided with plaintiff's version that it was "not going fast". Immediately after the skidding of the bus, Meyers looked into the rearview mirror, and observed nothing unusual. He continued southwardly on Eighth Street, and as he approached Chestnut plaintiff informed him that she had been thrown out of the seat as the bus was turning into Eighth Street off of Carr. Other pertinent evidence will be accorded consideration in disposing of the points raised and presented.

■ We consider instruction No. 5 not only in connection with verdict-directing instruction No. 2 to which instruction No. 5 specifically referred, but with all of the instructions. Venditti v. St. Louis Public Service Co., 362 Mo. 339, 240 S.W.2d 921,

loc. cit. 926. Instruction No. 2, after stating the duties cast upon the defendant as a public carrier of passengers, conditioned the verdict for plaintiff upon a finding of negligence in that the bus suddenly jerked and jolted in a violent manner, resulting in plaintiff's being injured. The instruction told the jury that from the sudden jerking and jolting they "may infer that the defendant * * * failed to exercise the highest degree of care and was negligent, * * *" unless the jury found "from *all of the facts and circumstances in evidence* that such occurrence was not due to the defendant's negligence". At the defendant's request the court gave a burden of proof instruction by which the jury was informed that they should not find that the defendant was negligent "from the mere fact of the occurrence * * * and if you do find and believe *from all the evidence in the case* that the defendant was not negligent, then your verdict should be in favor of the defendant". By criticized instruction No. 5 the jury was told that if they found that the "occurrence" mentioned in instruction No. 2 took place as submitted therein, "then the negligence of the defendant submitted in that instruction need not be proved by direct and specific testimony, but may be inferred from *all of the facts and circumstances in evidence*". (All italics supplied.)

Defendant's specific and precise attack upon the instruction is that the italicized portion thereof authorized "the jury to infer negligence from the sudden and unexpected skidding of the bus", which, according to defendant's contention, was not a negligent act.

We observe at the outset that if the instruction was erroneous for the reason assigned, with which we do not agree, the same vice inhered in instruction No. 2 given at the request of plaintiff (unchallenged by defendant), which also authorized the jury to consider *all of the facts and circumstances in evidence.* and also in the burden of proof instruction which directed a defendant's verdict if the jury found "*from all the*

*evidence in the case"* that the defendant was negligent.

■ While it is of course true that the mere skidding of a motor bus does not in and of itself necessarily constitute negligence,[1] it by no means follows that negligence may not in any event be inferred therefrom. This is clearly pointed out in Rodefeld v. St. Louis Public Service Co., Mo.Sup., 275 S.W.2d 256, loc. cit. 258, wherein the Supreme Court stated:

> "The rule that 'mere' skidding is not of itself negligence, nor of itself will permit an inference of negligence, applies only where the evidence proves that the skidding is the 'sole factual cause' of the occurrence. Dodson v. Maddox, 359 Mo. 742, 223 S.W.2d 434; Story v. People's Motorbus Co., 327 Mo. 719, 37 S.W.2d 898."

This principle is also recognized in Quadlander v. Kansas City Public Service Co., 240 Mo.App. 1134, 224 S.W.2d 396, and Bear v. Devore, Mo.App., 176 S.W.2d 862, which follows companion case of Bear v. Devore, Mo.App., 177 S.W.2d 674.

We have in mind that defendant's operator stated that as the rear end of the bus slid or skidded, it struck a rough place in the street. Apparently this testimony was relied upon to explain the sudden jolting and jerking of the vehicle. In rebuttal plaintiff established by an employee of the City of St. Louis who kept records and made reports in connection with the maintenance of streets in the city, that there was no record to show that the street in the designated area had been repaired subsequent to the date of the occurrence and prior to the trial. This proof was followed by the introduction of photographs taken some time following the date plaintiff was injured. Mr. Myers admitted they did not

reveal the "rough place" which he had previously stated was present. He further testified that he was thoroughly familiar with the intersection as he had been operating buses over the same route for approximately five months prior to the date in question. On the morning of the occurrence he had made other turns with his bus in the normal manner and without unusual consequences. From the foregoing facts and circumstances, the fact that the bus was moving at a very slow speed (3 to 5 miles per hour); the fact that the street surface was dry; the unusual movement of the rear end of the bus a distance of 6 to 8 feet in such a manner that plaintiff was thrown from her seat, we are not at liberty to hold as a matter of law that the skidding occurred under such circumstances that an inference of negligence could not arise therefrom. Consequently we hold instruction No. 5 did not misdirect the jury and is not fairly subject to the objections made against it.

Objections similar on principle have been heretofore considered and disallowed upon appellate review of instructions which gave the jury the right to infer negligence from *all of the facts and circumstances.* See White v. St. Louis Public Service Co., Mo. App., 249 S.W.2d 498, affirmed 364 Mo. 111, 259 S.W.2d 795; Harrison v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 348; Long v. St. Louis Public Service Co., Mo. App., 288 S.W.2d 417.

Refused instruction "A" told the jury that:

> "* * * the mere skidding of the defendant's motor bus is not any evidence of negligence and in this connection you are instructed that if you find and believe from the evidence that the driver of the defendant's bus was exercising the highest degree of care in

1. Heidt v. People's Motorbus Co. of St. Louis, 219 Mo.App. 683, 284 S.W. 840; Story v. People's Motorbus Co. of St. Louis, 327 Mo. 719, 37 S.W.2d 898; Polokoff v. Sanell, Mo.App., 52 S.W.2d 443; Neely v. Freeze, 240 Mo.App. 1001, 225 S.W.2d 144; Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872; Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W.2d 59.

the operation of the bus at all times, and further find that the bus suddenly skidded against a rough place in the street, then you are instructed that the plaintiff cannot recover and your verdict must be for the defendant."

In arguing that the instruction was proper, defendant emphasizes and relies on the well-settled rule that in determining whether an instruction offered by defendant has factual support, we must consider the evidence in the light most favorable to the defendant, together with all favorable and reasonable inferences to be drawn therefrom. Rose v. St. Louis Public Service Co., Mo.Sup., 205 S.W.2d 559, loc. cit. 560, and cases there cited. Defendant insists that since the bus operator testified unequivocally with respect to the skidding, it was entitled not only to have that issue squarely submitted, but to be exonerated if the jury found that the bus operator was exercising the highest degree of care in the operation of the bus at the time the rear end thereof slid against the rough place in the street. On the other hand, plaintiff urges the instruction was erroneous for four distinct reasons, which may be summarized as: (1) It would have exonerated defendant upon a finding that only the operator was exercising the highest degree of care, and without a finding that the *defendant* was likewise in the exercise of the same degree of care; (2) the jury could have exonerated the defendant without finding any causal connection between the sudden jerk which threw plaintiff from her seat and the skidding into a rough place; (3) the instruction failed to require a finding that the skidding was the sole cause of the jerk; and (4) it improperly informed the jury that the skidding of the bus was no evidence of negligence.

Without passing upon or deciding the correctness of reasons two and three, we are convinced that the instruction was properly refused for reasons one and four advanced by plaintiff, which we consider in that order.

■■ The principle is firmly established that in res ipsa loquitur cases the defendant is entitled to submit in an instruction the evidence adduced by him in explanation of the occurrence, especially evidence explanatory of the res ipsa loquitur facts which show no negligence. Jones v. Terminal R. R. Ass'n of St. Louis, Mo.Sup., 242 S.W.2d 473, loc. cit. 478, 479; Payne v. Carson, Mo. Sup., 224 S.W.2d 60. However, the Supreme Court in the Jones case distinctly pointed out that a defendant's verdict-directing instruction in a res ipsa loquitur case "must enumerate, if that is the way it is to be done, and require a finding for the defendant *on every reasonable ground of negligence* on its part, it may not limit or restrict the finding to but one of several permissible inferences of negligence. Gordon v. Muehling Packing Co., 328 Mo. [123] loc. cit. 141, 40 S.W.2d [693] loc. cit. 701; Biehle v. Frazier, 360 Mo. 1068, 232 S.W.2d 465." Jones v. Terminal R. R. Ass'n of St. Louis, 242 S.W.2d loc. cit. 479. (Emphasis supplied.) In Stofer v. Harvey, Mo.App., 204 S.W. 587, also cited with approval in the Jones case, a refused instruction would have conditioned a verdict for defendant on a finding that the street car became unmanageable and ran away without fault or negligence on the part of the motorman. In holding the instruction did not properly declare the law in a res ipsa loquitur case, the court said that "although the motorman might not have been negligent in operating the car, the *defendant* might have been negligent in other respects, such as maintaining the car, tracks, and other things used in the operation of street cars in proper condition". (Emphasis supplied.) Stofer v. Harvey, supra, 204 S.W. loc. cit. 588. Again, in Nix v. St. Louis Public Service Co., Mo.App., 228 S.W.2d 369, this court dealt with and held improper an instruction which submitted only the question of whether the bus operator was exercising the highest degree of care. Other cases announcing the same rule and condemning instructions limiting the scope of permissible inferences under the res ipsa loquitur doctrine are: La Vigne v. St. Louis Public Service Co., Mo.

Sup., 181 S.W.2d 541; Scheipers v. Missouri Pac. R. Co., Mo.Sup., 298 S.W. 51.

■■ We recognize an exception exists to the foregoing principle, which is that plaintiff, in a res ipsa loquitur case, is not limited to the negligence of the operator of the vehicle unless the facts shown reasonably exclude all other hypotheses than that of his negligence. Charlton v. Lovelace, 351 Mo. 364, 173 S.W.2d 13, 18; La Vigne v. St. Louis Public Service Co., supra, Mo. Sup., 181 S.W.2d loc. cit. 543, 544; Nix v. St. Louis Public Service Co., supra, Mo. App., 228 S.W.2d loc. cit. 372. But we find no basis for applying that rule to the instant situation. Plaintiff's testimony did not establish or indicate what caused the bus to suddenly jerk and lurch. Her evidence does not show that the occurrence resulted solely from the manner in which the bus driver was operating the vehicle. The facts and circumstances surrounding the skidding, on which we have heretofore elaborated were such that we cannot hold that all other hypotheses except that of the bus operator's negligence were excluded.

■ Instruction "A" was also erroneous and properly refused because it would have prohibited the jury from considering the skidding movement of the bus in determining the primary and basic question of defendant's negligence. The instruction would not have informed the jury that the skidding of the bus was insufficient in and of itself to constitute or establish negligence. Rather, the court would have thereby declared that "the mere skidding of the defendant's motor bus *is not any evidence of negligence* * * *". (Emphasis supplied.) The conclusion is irresistible that a jury of laymen possessing average intelligence would have understood that statement to mean that an inference of negligence could not be drawn from the unusual movement of the rear end of the bus as it negotiated the turn. To point out why such a withdrawal would have been improper would only serve to burden this opinion with repetition. Our reasons for holding

the jury had the right to consider the skidding as a circumstance in inferring negligence were expressed in resolving the propriety of the court's action in giving instruction No. 5. Inasmuch as those expressed views apply here, we refrain from further comment on the question.

■ Defendant's final contention that the verdict is grossly excessive necessitates a review of the medical testimony and other evidence bearing on the nature and extent of the injuries sustained by plaintiff. In passing upon this issue we must view the evidence in the light most favorable to plaintiff, and all evidence which tends to support the verdict must be taken as true. Mickel v. Thompson, 348 Mo. 991, 156 S.W. 2d 721; Long v. St. Louis Public Service Co., supra, Mo.App., 288 S.W.2d 417, 427; Arl v. St. Louis Public Service Co., Mo. App., 243 S.W.2d 797; Rossommano v. Quality Dairy Co., Mo.App., 297 S.W.2d 591.

At the time plaintiff was injured, in August, 1954, she was sixty-five years of age. She was an elevator operator and had been employed as such at 722 Chestnut Street, St. Louis, Missouri, since September, 1942. She became sick after being thrown from her bus seat, and after she arrived at her place of employment she said she was so sick, "I felt like I was going on my face". Because of being nauseated, she vomited, and thereafter returned to her job, where she remained until one o'clock that day. She remained in bed most of the time the following two days (Saturday and Sunday). On Monday morning she observed that her back was discolored and swollen, and on that day she saw Dr. Solon Cameron, who prescribed medicine for her. Plaintiff remained away from work until the Tuesday following Labor Day, but received her regular pay during her absence. She testified that for a period of six weeks following the injuries she experienced great pain and had difficulty in walking. Pursuant to her doctor's directions she applied heat to her back, but at the time of the trial in Novem-

ber, 1955, she still suffered from pain, which she described as feeling "like a dull tooth-ache". She also said the pain was more severe when the "weather changes".

Dr. Cameron testified he saw plaintiff at his office on August 30, 1954. Examination revealed a bruise and discoloration about three inches by five inches over the left hip. He found that the muscles in plaintiff's back were spastic, and that plaintiff complained of acute pain on pressure. He also found "quite a swelling" in the middle of plaintiff's back. The doctor administered procaine-hydrochloride by injection into the left hip on three or four occasions, and also prescribed ampules of sodium salicylate to control the pain. For a period of approximately four months the doctor saw plaintiff at his office twice a week, and thereafter once a week. Dr. Cameron diagnosed plaintiff's condition as a "bruise, contusion of the left hip and aggravation of a pre-existing hypertrophic arthritis". He was of the opinion that because plaintiff was still suffering from pain at the time of the trial, the aggravated condition of the hypertrophic arthritis was still present. Dr. Cameron's charge for services rendered to date of trial was $250.

Dr. Stanley S. Nemec, an X-ray specialist, took three X-rays of plaintiff's back on September 1, 1954. They revealed sclerosis in the sacrum which was produced by arthritis. Based upon a hypothetical question which submitted the manner in which plaintiff received her injuries, her complaints, treatment, and pain, the doctor stated that the fall plaintiff sustained produced a tearing of the soft tissues, ligaments and muscles of the back and was sufficient to aggravate and activate the arthritis which the doctor found in plaintiff's back. The cost of the X-rays was $40.

Plaintiff was also examined by Dr. Robert Funsch, an orthopedic surgeon, on February 10, 1955. He found that plaintiff was rather obese, being five feet one inch in height, and weighing 193½ pounds. Dr. Funsch also discovered arthritis in plain-

tiff's back, but was of the opinion that she had sustained no serious or permanent injuries as the result of the accident.

In disposing of the question of excessiveness we observe the principle that a jury verdict should not be disturbed as to the amount unless it is grossly excessive. Keely v. Arkansas Motor Freight Lines, Mo.Sup., 278 S.W.2d 765, 771. "The test is whether or not the size of the verdict is such as to shock the conscience of the court." Rinderknecht v. Thompson, 359 Mo. 21, 220 S.W.2d 69, 75; Brandt v. Thompson, Mo.Sup., 252 S.W.2d 339, 342. We have carefully reviewed and considered the seven cases cited and relied upon by the defendant. No useful purpose would be accomplished by a discussion thereof because in the final analysis each case must rest upon and be decided in light of its own facts and circumstances. We note, however, that in Morris v. Alexander, Mo.App., 275 S.W. 2d 373, one of the cases relied upon, the injuries were of a minor nature. Plaintiff lost no time from his business, was not confined to his bed or home, and there was no evidence of medical or hospital expense. There the jury's verdict of $4,500 was reduced to $3,000. McBride v. Clarida, Mo. App., 254 S.W.2d 36, also relied upon by defendant, furnishes little, if any, support to the contention of excessiveness. Therein the plaintiff sustained a nose injury, and suffered from headaches and a nervous condition for several months. The verdict of $5,000 was reduced to $3,000.

Considering the nature of plaintiff's injuries, her pain and suffering which persisted to the time of the trial, the tearing of the soft tissues, ligaments, and muscles of her back, the aggravation of a pre-existing hypertrophic arthritic condition in her back which, according to the medical testimony, is chronic, together with the expenses incurred for treatment, we are unwilling to interfere with the jury's verdict. Although the amount of the verdict constituted a liberal award, we do not feel it excessive to the point where a remittitur should be or-

dered. This view finds support in these cases where somewhat similar injuries and disabilities supported verdicts in excess of the instant award: Harvey v. Gardner, 359 Mo. 730, 223 S.W.2d 428, 433, 434; Doutt v. Watson, Mo.App., 231 S.W.2d 230, 234; Arl v. St. Louis Public Service Co., supra, Mo.App., 243 S.W.2d 797.

The judgment should be and is affirmed.

RUDDY, P. J., and ANDERSON, J., concur.