HARRY RHINEBERGER v. GUY A. THOMPSON, as Trustee and Receiver of the MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Appellant.—No. 39822.—202 S. W. (2d) 64.

Court en Banc, May 12, 1947.

*Thomas J. Cole, Oliver L. Salter* and *John J. Cole* for appellant.

*Louis E. Miller, A. G. Jannopoulo, R. E. Kleinschmidt* and *B. Sherman Landau* for respondent.

■ VAN OSDOL, C.—Appeal from a judgment for plaintiff for $15,000 for personal injuries. Plaintiff was injured when the 1929 Model A Ford Tudor sedan which he was driving and defendant's southbound Sunshine Special ■ train collided at a grade crossing at Silica, Jefferson County. Plaintiff's case was submitted to the jury upon primary negligence, common law and statutory, of defendant in failing to warn of the train's approach.

Defendant-appellant assigns error of the trial court in submitting plaintiff's case to the jury—defendant-appellant contends that, under the evidence, plaintiff was guilty of contributory negligence as a matter of law. Other errors are assigned in refusing to give defendant's requested Instruction B; in giving Instruction No. 1 proffered by plaintiff; and in rulings upon the admissibility of evidence. Defendant-appellant also contends the amount of the award was grossly excessive.

Defendant had alleged by answer that plaintiff's own negligence was the sole or, at least, a contributing cause of his injury, specifically alleging plaintiff did not exercise the highest degree of care in the operation of his automobile in that he was driving while under the influence of intoxicating liquor; at a highly dangerous and reckless rate of speed; with defective brakes; without stopping, looking or listening for trains; and in failing to stop, swerve or turn his automobile to avoid the collision.

The question of plaintiff's contributory negligence was a jury question unless it should be said as a matter of law that plaintiff, operating a motor vehicle on a public highway, failed to exercise the highest degree of care; that is, such care as would ordinarily be exercised by a very careful person under the same or similar circumstances. In determining whether plaintiff was guilty of contributory negligence as a matter of law, the evidence in plaintiff's favor must be accepted as true and plaintiff must be allowed the benefit of every reasonable inference which can be drawn from all of the evidence. Fitzpatrick v. Kansas City Southern R. Co., 347 Mo. 57, 146 S. W. 2d 560.

At Silica, County Highway A crosses defendant's single-track rail line in an east-west direction, the intersection of the highway and railroad being about at a right angle. County Highway A is surfaced with "black top"; and, when the collision occurred, the highway had been freshly oiled and covered with "chat." Defendant's right-of-way to the northward of the intersection is curved to the westward and defendant's trains, coming southwardly, pass through a deep "cut" the banks of which gradually lessen in height until the earth flattens out at the crossing. The track passes the crossing in a continuation of the curve; and the east rail is higher than the west one, making the crossing somewhat uneven. There was testimony introduced tending to show the cut tends to absorb sound waves; and a train coming from the north cannot be heard "until it gets up practically on the crossing." At a point 22½ feet east of the east rail at the crossing on a clear day, the sight distance up the track to the right (north) is 537 feet. Plaintiff testified that at the time of the collision it was "deep dusk" and, when 22½ feet east of the east rail at the crossing, he could see but 150 to 200 feet up the track to the northward. About five feet closer to the east rail, however, he could have seen "farther up the cut." Plaintiff was familiar with the crossing, having driven over it 800 to 1000 times. The crossing is dangerous. Defendant at some prior time had constructed an automatic signaling device, having a combination of "wig-wag," red light and bell signals, to warn travelers on County Highway A of the approach of trains on defendant's line. The signaling device is located a few feet west of defendant's track and north of the surfaced portion of the highway.

At approximately 7:15 P. M. October 7, 1943, plaintiff traveling westwardly approached the crossing; and defendant's Sunshine Special, a fast train, moving southwardly passed over the crossing. Plaintiff testified, in giving an account of the collision, as follows,

"I knew there were trains went through Silica and some of them went very fast, and at the time of the evening I knew there should be a train, a fast train already gone, because he was due there through Silica at 7:00 o'clock and I knew it was past 7:00; nevertheless, I stopped at a telephone pole there, it is just 22 feet and 6 inches east of the east rail at this crossing . . . first I looked north on the crossing, I didn't see anything; then I looked south and didn't see anything coming; I looked straight ahead at the bell signal and it was not working in any respect, no lights, no bell and no wig-wag; I started my Ford again then to go on across and just as I got my Ford in low gear and moved a very few feet I heard a whistle, a train whistle, and I looked up the track and saw this train coming just 100 feet up the track; then I couldn't get on across, I didn't even try; I thought the only thing to do was back up real fast so I put my Ford in reverse and before I could let my clutch out, why, the

train had already caught the right front fender of 'my Ford, and we just went down the track . . . It did turn my Ford around, I remember that very well; it turned my Ford around; the front end (a cylinder on the side of the engine just back of the cowcatcher) of the train hit my front fender and wheeled it around real fast, and there was a noise on the back end of my Ford; I could feel the jolt.''

Before the whistle was sounded, plaintiff had heard nothing ''like a noise of an approaching train.'' He saw no headlight on the locomotive.

■ If, in approaching a railroad grade crossing, a highway traveler's view is obstructed and he is unable to see whether he can pass across in safety, he should exercise care commensurate with the circumstances; he should stop, if necessary, and look or listen under circumstances where looking or listening are effective; and, if the view is obstructed, he should give more attention to sound and approach at such speed that he can stop after passing obstructions and before entering within the zone of danger. State ex rel. Kurn v. Hughes, 348 Mo. 177, 153 S. W. 2d 46, and cases therein cited. In a case where to look is to see and a plaintiff, having a duty to look, says he did not see, it is presumed he failed to look or looked so carelessly or inefficiently as to amount to not looking at all. State ex rel. Kansas City Southern R. Co. v. Shain, 340 Mo. 1195, 105 S. W. 2d 915; Dempsey v. Horton, 337 Mo. 379, 84 S. W. 2d 621; Zumwalt v. Chicago & A. R. Co., Mo. Sup., 266 S. W. 717; Hale v. St. Joseph Ry., Light, Heat & Power Co., 287 Mo. 499, 230 S. W. 113; Kelsay v. Missouri Pac. Ry. Co., 129 Mo. 362, 30 S. W. 339. It may be that the noise made by running trains will vary some with the gradient of the track and their speed, length, weight and character (passenger or freight), but it is common knowledge that all make operating noises. Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 214, 172 S. W. 2d 826. In our case, however, it should not be presumed that plaintiff did not listen because he did not hear the train's approach, in view of the testimony that the ''cut'' absorbed the noise of approaching trains. Now, obviously, the due care which a plaintiff, a traveler upon a highway, is required to exercise in approaching a railroad grade crossing is not such care as would under any and all circumstances prevent injury; and in the instant case the question is, would all reasonable minds agree that plaintiff failed to exercise care commensurate with the circumstances obtaining. State ex rel. Kurn v. Hughes, supra; Perkins v. Kansas City Southern R. Co., 329 Mo. 1190, 49 S. W. 2d 103; Monroe v. Chicago & A. R. Co., 280 Mo. 483, 219 S. W. 68. It was plaintiff's duty, in approaching the crossing, to lend an attentive eye and ear to the signaling device defendant had installed to warn highway travelers of passing trains. Perkins v. Kansas City Southern R. Co., supra. The unlit, silent, inactive signaling device impliedly assured the highway traveler, plaintiff, the

526

crossing could be made in safety. While one in the exercise of due care would not rely solely upon the performance of defendant of the duty assumed in erecting the signaling device and would use his own senses, yet, a person, although exercising due care, doubtless would feel more secure and would be less vigilant than if defendant's implied assurance that the crossing could be made in safety had not existed. Perkins v. Kansas City Southern R. Co., supra; Gorman v. St. Louis Merchants' Bridge Terminal R. Co., 325 Mo. 326, 28 S. W. 2d 1023; Bachman v. Quincy, O. & K. C. R. Co., 310 Mo. 48, 274 S. W. 764; Sisk v. Chicago, B. & Q. R. Co., Mo. App., 67 S. W. 2d 830. Moreover, in the instant case, as seen from the testimony of plaintiff quoted supra, there was evidence tending to show plaintiff was familiar with the schedule of defendant's ▆▆ southbound Sunshine Special train and that he approached the crossing at a time subsequent to the scheduled time. Plaintiff's consciousness that there was no train scheduled to pass the crossing at the time is a circumstance which may be taken into account in determining whether or not plaintiff was in the exercise of due care. Gayle v. Thompson, Mo. App., 167 S. W. 2d 954; The Continental Improvement Co. v. Stead, 95 U. S. (5 Otto) 161; Pennsylvania R. Co. v. Moffitt, 1 F. 2d 276.

Considering all of the facts and circumstances which we have related supra, especially the circumstance of the silent, unlit and motionless signaling device, we believe it could not be said that all reasonable minds would be in agreement that plaintiff failed to exercise due care in approaching the crossing, and we rule the trial court did not err in submitting the issues of plaintiff's case to the jury.

▆▆ As stated, defendant complains of the trial court's refusal of defendant's Instruction B, an instruction hypothesizing contributory negligence. The instruction, if given, would have submitted contributory negligence of plaintiff in operating his automobile "when under the influence of whiskey, or at a highly dangerous and reckless rate of speed, or with defective brakes, or without looking, stopping or listening for trains, or by failing to stop, swerve or turn his said automobile to avoid the collision"; and would have required a finding for defendant if the jury found plaintiff "was guilty of any of the foregoing acts or omissions" and if the acts or omissions were found to be negligent and contributed to cause plaintiff's injuries. The same rule should apply to instructions submitting several specific charges of contributory negligence as applies to the instructions submitting several specific charges or theories of defendant's negligence. Here the several charges of specific negligence of plaintiff were submitted in the alternative or disjunctive. See Hutchison v. Thompson, Mo. Sup., 175 S. W. 2d 903; Lackey v. United Rys. Co., 288 Mo. 120, 231 S. W. 956; Vol. 1, Raymond, Missouri Instructions to Juries, sec. 70, pp. 62-63. Defendant does not assert (nor does our examination of the transcript of the record disclose) that substantial evidence

supports all of the issues of specific negligence of plaintiff hypothesized in the alternative in the instruction. Particularly, for example, there was no substantial evidence introduced supporting a hypothesis that plaintiff was contributorily negligent in operating his automobile with defective brakes. We believe it was not error to refuse the instruction.

Defendant did not tender a correct instruction specifically submitting plaintiff's contributory negligence in driving while intoxicated; nevertheless, defendant says plaintiff's principal Instructions Nos. 1 and 2 purporting to cover·the whole case and authorizing a verdict for plaintiff upon a finding of submitted primary negligence are erroneous in that these instructions ignore defendant's defense of contributory negligence of plaintiff in driving while intoxicated. The Instructions Nos. 1 and 2 negatived generally the negligence of plaintiff as we shall see infra, and we believe defendant in such a situation should have tendered a correct instruction submitting the specific issue. The case of Pence v. Kansas City Laundry Service Co., 332 Mo. 930, 59 S. W. 2d 633, is cited by defendant. In the Pence case the plaintiff by her three principal instructions undertook to submit the grounds of pleaded specific negligence. The instructions required a verdict for plaintiff upon the finding of the facts hypothesized; and each contained a clause negativing generally the failure of plaintiff to exercise *ordinary* care for her own safety. The instructions were held erroneous because they failed to take into account an issue of ''joint control'' of the automobile in which plaintiff was riding when injured. The issue of joint control was supported by substantial evidence; and joint control, if it existed, made plaintiff chargeable (quite as the driver) with the *highest degree* of care. And the Pence case was decided prior to Dorman v. East St. Louis R. Co., 335 Mo. 1082, 75 S. W. 2d 854, wherein the court discussed the extent of duty devolving on the trial court and on plaintiff in instructing the jury, and wherein it was said a failure to inform the jury of the law of the case constitutes at least ▮ prima facie error; however, the court in that case did not need to discuss the extent of such duty devolving on defendant. Since the Dorman case it has been held that, where a defendant requests the submission of one or more of several pleaded specific charges of affirmative defense and does not request the submission of the other specific charges, he will be considered to have voluntarily abandoned the latter although they were supported by substantial evidence. Billingsley v. Kansas City Public Service Co., Mo. App., 191 S. W. 2d 331; Hill v. Landau, Mo. App., 125·S. W. 2d 516; Studt v. Leiweke, Mo. App., 100 S. W. 2d 30. See also Zambruski v. Ludewig, Mo. App., 110 S. W. 2d 825; and compare with Pence v. Kansas City Laundry Service Co., supra. In the instant case defendant requested and the trial court gave 'an instruction submitting specific contributory negligence of plaintiff in failing to look and lis-

ten; and requested the giving of Instruction B (correctly refused by the trial court, we have said) including specified negligence of plaintiff in operating his automobile while intoxcated. Now it could not strictly be said defendant voluntarily abandoned the charge; nevertheless, assuming substantial evidence supported such issue, the defendant did not offer a proper instruction submitting it; and moreover, we believe, any prima facie error in failing to instruct the jury thereon does not exist in the instant case wherein defendant's plea of contributory negligence was recognized generally by the last clause of Instruction No. 1, infra (which is quite like the last clause of plaintiff's Instruction No. 2, namely, "provided you find the plaintiff to have been in the exercise of the highest degree of care for his own safety at the time").

Plaintiff's Instruction No. 1, after submitting facts of plaintiff's approach to the crossing, continues, "And if you further find . . . that the defendant failed to sound any warning signal reasonably audible to persons . . . of the approach of the said train, until the train was about one-hundred feet from said public crossing, if you so find; and if you further find the plaintiff was unaware of the approach of said train until the whistle thereon was sounded, and if you further find that in so failing to sound any warning signal · reasonably audible to persons at the crossing, under the circumstances in evidence, the defendant was negligent, and that as a direct and proximate result thereof the locomotive was caused to collide with the automobile of the plaintiff and to injure the plaintiff, if you so find, then your verdict will be in favor of the plaintiff and against the defendant, provided you find the plaintiff to have been in the exercise of the highest degree of care for his own safety at the time." We do not agree with defendant's contentions that the instruction assumed a warning at a distance of one hundred feet would not have been a sufficient warning and that the instruction assumed no warning signal reasonably audible was given until the engine was one hundred feet from the crossing. The instruction required that the jury find that there was a failure to sound any reasonably audible warning signal until the train was about one hundred feet from the crossing. It was admitted by plaintiff that defendant had sounded a warning whistle about 100 feet north of the crossing. See plaintiff's testimony quoted supra. While the instruction does recognize and emphasize the testimony of plaintiff, it seems the reference is but an inducement upon which to predicate a submission of negligence in failing to sooner sound a warning. The instruction also requires the jury to further find the failure to so give the warning, under the circumstances in evidence, was negligent and that plaintiff's injury was the direct and proximate result thereof. The instruction differs from that held to have been properly refused in the case of Zumwalt v. Chicago & A. R. Co., supra. Defendant further contends the In-

struction No. 1 and plaintiff's Instruction No. 2 ignore the testimony of a witness for plaintiff, which testimony was to the effect the bell of the locomotive was ringing and a loud blast of the whistle was sounded about two hundred thirty feet north of the crossing. Plaintiff was not bound by the adverse testimony of his witness where other testimony is to the contrary; and, of course, plaintiff had the right to submit his own theory of the case and to hypothesize facts supported by evidence which, if ▆▆▆ found true, would render defendant liable. Sisk v. Chicago, B. & Q. R. Co., supra.

▆▆▆ Evidence that plaintiff was intoxicated at the time of the collision was material to the issues of the case; and defendant was accorded a very wide latitude in the cross-examination of plaintiff, not only as to his conduct and the number of drinks plaintiff had consumed the day of the collision, but also in regard to plaintiff's liquor-drinking capacity." Defendant says the trial court erred in refusing to allow the introduction of a part of plaintiff's deposition "relating to plaintiff's liquor-drinking capacity." In his deposition, plaintiff had testified he could drink as much as a pint "without it affecting" him; we doubt the testimony was admissible as an admission in tending to prove that plaintiff was intoxicated at the time of the collision. The mode and extent of the cross-examination in impeachment is largely within the discretion of the trial court. Bush v. Kansas City Public Service Co., 350 Mo. 876, 169 S. W. 2d 331. Later in the trial, defendant again offered the deposition "in its entirety." Plaintiff's counsel was insisting "certain portions" of the deposition should be excluded. The trial judge inquired if the deposition was again being offered and defendant's counsel replied, "I am just giving it to you." The trial judge said, "You haven't insisted on showing it to the jury." Defendant's counsel then said, "It is not my time. I will, later." We find no further definite offer to introduce the deposition into evidence, and the trial court could not really be said to have excluded the deposition.

▆▆▆ We believe the trial court correctly sustained plaintiff's objection to a question as to plaintiff's general reputation for sobriety. The character of plaintiff for temperance was not an issue, and, in our opinion, the plaintiff's general reputation for sobriety was inadmissible upon the issue of plaintiff's intoxication at the time of the collision. See Vol. I, Wigmore on Evidence, 3d Ed., sec. 64, p. 472.

▆▆▆ Plaintiff, when injured, was about 38 years old. He was rendered unconscious by the collision and regained consciousness five days later. He was confined in the hospital seventeen days; during much of this time he was delirious. He experienced a comminuted fracture of his right clavicle or collarbone with a downward displacement of the outer fragment and an upward displacement of the inner fragment; there is no direct union of the bones which now overlap one half to three fourths of an inch. There were fractures of three

ribs on the right side, although the ribs are now "practically normal." He suffered a concussion of the brain, and the loss of the hearing of the right ear. A physician was of the opinion the loss of hearing is permanent. He also suffered lacerations about the head, the face, the right ear, the right knee and the right foot. Some of the lacerations required suture. He has suffered and is suffering severe pain, especially in his head and his right ear. He experiences dizziness, and is restless at night. The normal use of the right arm and shoulder is permanently impaired. He lost one or more teeth, and twelve of his teeth were loosened. He has paid or has become obligated for $150 for medical treatment. When injured he was employed by a telephone company in the capacity of groundman and received 45¢ per hour for eight hours per day. Intermittently, during the months of December 1943 and January and February 1944, he worked 21½ days for the telephone company, but could not, we infer, perform the heavy work of a groundman, and began lighter work for the St. Joseph Lead Company April 12, 1944, earning between forty and fifty dollars per month. As stated, defendant asserts the jury's award, $15,000, was grossly excessive.

In determining that which constitutes a reasonable award, the facts of the particular cause are considered as viewed in relation to economic conditions and with a regard for a reasonable uniformity of awards. Plaintiff's ability to perform all kinds of labor and his consequent ability to procure a position during times of competitive labor conditions has been lessened, and it is seen that his earnings since April 1944 have been less than before his injury. He has not lost earnings to the extent as had plaintiff in the case of Wellinger v. Terminal R. Ass'n. of St. Louis, 353 Mo. 670, 183 S. W. 2d 908, and we doubt that his body injuries are more painful or disabling than were those of plaintiff in the Wellinger case. In the Wellinger case a verdict for $15,000 was reduced to $10,000; however, plaintiff in the Wellinger case was older than plaintiff herein and plaintiff in the Wellinger case had experienced no broken bones; and in the instant case we have for our consideration the fact of the loss of plaintiff's hearing in the right ear. Taking all the facts pertinent to the question of excessiveness of the award, and the presently obtaining decline in the purchasing power of the dollar, we are not constrained to say the verdict was excessive.

The judgment should be affirmed.

It is so ordered.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the Court en Banc. All concur, except Conkling and Clark, JJ., who dissent.