Icy Marie HALE, Respondent,

v.

**KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.**

No. 49180.

Supreme Court of Missouri,

Division No. 1.

Jan. 14, 1963.

Johnson, Johnson & Landis, Thomas A. Johnson, James P. Landis, Neosho, for appellant.

Emerson Foulke, Joplin, Edward V. Sweeney, Monett, for respondent.

HOLMAN, Commissioner.

Plaintiff received serious personal injuries on June 30, 1956, when the car she was

driving ran into the side of a freight train which was standing on defendant's main line track at the point where it crosses 15th Street in Joplin, Missouri. In this action to recover damages for said injuries she obtained a judgment for $17,000. Defendant has duly appealed therefrom.

■ The sole point briefed upon this appeal is that the trial court erred in overruling defendant's motion for a directed verdict because the evidence showed that plaintiff was guilty of contributory negligence as a matter of law. In determining that contention we will view the evidence in the light most favorable to plaintiff, give her the benefit of all favorable inferences arising therefrom, and disregard defendant's evidence unless it aids plaintiff. Erbes v. Union Electric Company, Mo.Sup., 353 S.W.2d 659.

Plaintiff testified that at all times herein mentioned she resided in Joplin, Missouri, and that prior to being injured she was in good health and regularly employed; that she had had a cataract removed from her left eye about a year before but, although she could not read with that eye, she could see with it at a distance, and that she had 20–20 vision in her other eye; that at the time in question she was on vacation and had spent Friday, June 29, visiting at the home of her daughter who also lived in Joplin; that she had a date for that evening with a friend, Harold Smith, who came by for her about 9:30 o'clock; that she and Harold went to the home of Mr. and Mrs. Marcum where they visited and played cards until about 2 a. m.; that upon leaving the Marcum home Harold took her to her daughter's home where she got into her car with the intention of driving it to her home; that Harold was to follow in his car; that her automobile was a 1956 Plymouth which was practically new and was in good mechanical condition; that in proceeding to her home she drove west on 15th Street at about 30 miles per hour.

Plaintiff further testified that as she approached the point of collision her lights were on low beam and would normally show objects ahead for a distance of 100 feet; that the level of defendant's tracks was two or three feet higher than the level of the street on each side; that she had driven over this crossing many times and knew that there was an automatic signal device on each side of the track which would flash red lights and ring a bell when a train approached or occupied the crossing; that she watched the signal for two blocks before arriving at the crossing and the lights did not come on and the bell did not ring; that when she was from 75 to 100 feet from the crossing she looked both to the north and to the south and saw nothing; that the street had a dark blacktop surface for some distance east of the crossing and when her car reached a point 75 feet from the crossing she was momentarily blinded by the lights from cars across the track, and when she was about 40 feet from the track, "all of a sudden I saw a black object in front of me. * * * I applied my brakes and I must have been knocked unconscious as I don't remember anything until Harold was helping me, dragging me out of the car"; that some members of the crew came and talked with Harold; that a policeman came and took her to the home of her sister who called a doctor, and she was taken to the hospital.

It was the further testimony of plaintiff that there was no street light on the east side of the crossing, although there was one a short distance west of the railroad track; that her car was equipped with power brakes and she thought she could stop it in 75 feet at 30 miles per hour.

A summary of her reasons for not seeing the train in time to avoid colliding with it is contained in the following testimony: "Q. I want to know why didn't you see the train before you saw it? A. Because the signal lights were not working, and I had always depended upon them working. I looked up, back and forth on the track, and I saw nothing. It was dark, and I had always relied on the signal lights. Q. All right, and what kept you from picking them

up with the lights of your car? A. Because of the incline. There was a dark—the incline is dark, and that absorbs the light of the cars, so, therefore, I couldn't see as far in the distance as I normally would. And the incline also tended to show the lights under the object instead of on the object. Q. And I believe you said, also, that the lights on the car meeting you blinded you, is that right? A. And with the other cars coming toward me, the headlights seemed to blind me momentarily until—. Q. And under all the conditions that were existing, did you see that object as quick as you could? A. I saw the object as quickly as I could."

Harold Smith testified that he had been following about 150 or 200 feet behind plaintiff's car in order to see that she got home alright; that prior to the collision she had been traveling about 25 or 30 miles per hour; that he did not see any warning signal flashing at the crossing; that he first noticed plaintiff's brake lights go on and then heard a crash momentarily thereafter; that he stopped his car, "jumped out and ran up to Mrs. Hale's car which was partly under a boxcar"; that after some difficulty he was able to get the door open and to remove plaintiff from her car; that shortly thereafter the train started to move forward and pulled plaintiff's car down the track for 20 or 25 feet; that after the train had cleared the crossing it came to a sudden stop and some of the members of the crew "came back to where we were"; that soon after getting out of his car he particularly observed the electric signal device at the crossing and saw that it was not operating; that he could not see any street light at this location. Mr. Smith also testified as follows: "Q. Now, was there any way, considering the condition of that street and the condition of the night and the light conditions, that a person could have seen that car and avoided striking it, driving up on it? A. I don't believe there would have been."

Another witness for plaintiff, Joe H. Smith, testified that a day or two before plaintiff was injured he had been at this crossing and had seen a train on the crossing and the signal light was not operating.

The signal light in question was described in the testimony as having two horizontal red lights which flashed alternately when a train was within a certain distance of the crossing, and directly under the flashing lights were four perpendicular red lights which burned continuously when the signal was operating. The testimony indicated that the signal was supposed to become activated when an approaching train arrived at a point 2,000 feet from the crossing and would continue to operate until the entire train had cleared the crossing. The testimony further indicated that plaintiff's car struck the 25th car of a 50-car freight train which remained stationary on this crossing for a period of from six to eight minutes.

A highway patrolman testified for the defendant to the effect that at 30 miles per hour on dry pavement an automobile could be stopped in 79 feet.

We will not extend this opinion by detailing other testimony offered by defendant as it does not aid plaintiff's case and, under the rule heretofore stated, is to be disregarded.

Both parties offered as exhibits pictures of the crossing in question. We are particularly impressed with plaintiff's exhibit No. 4 which is an enlarged photograph of the crossing showing a freight train on the crossing and a car stopped on the other side of the tracks waiting for the train to pass. This picture clearly shows the elevation of the tracks and the manner in which the lights of a car on the other side could shine under a freight car standing on the crossing and perhaps affect the vision of the driver of a car approaching from the east.

Plaintiff's case was submitted upon the primary negligence of defendant in negligently maintaining a signal warning device at the crossing in question which failed to operate. No question is raised concerning the sufficiency of the evidence to support that submission. Two instructions given at

the request of defendant submitted the defense of plaintiff's contributory negligence in failing to keep a lookout and in failing to avoid a collision with the freight car by stopping or turning her automobile. As we have said, the issue here is whether plaintiff was guilty of contributory negligence as a matter of law.

■ It was plaintiff's duty at the time and place in question to exercise the highest degree of care in the operation of her automobile. The issue of her contributory negligence was a question for the jury unless it must be said, as a matter of law, that she failed to exercise the highest degree of care. If the evidence is such that all reasonable minds would arrive at the conclusion that plaintiff, in the situation here presented, failed to exercise the highest degree of care, then she is barred from recovery as a matter of law. However, if, from a consideration of the evidence favorable to plaintiff, reasonable men may honestly differ upon that issue, then, as stated, the question was properly for the determination of the jury.

■ We agree with defendant's contention that the railroad track itself, and the standing train thereon, would ordinarily be a warning of danger. However, where, as here, the railroad maintains a mechanical device to warn persons on the highway of the presence of a train on or near the crossing, and the party charged with contributory negligence knows of its existence and relies upon it, and that device fails to operate, such is a very potent factor to be taken into account in determining the issue of contributory negligence.

We have said that it was "plaintiff's duty, in approaching the crossing, to lend an attentive eye and ear to the signaling device defendant had installed to warn highway travelers of passing trains. Perkins v. Kansas City Southern R. Co., supra [329 Mo. 1190, 49 S.W.2d 103]. The unlit, silent, inactive signaling device impliedly assured the highway traveler, plaintiff, the crossing could be made in safety. While one in the

exercise of due care would not rely solely upon the performance of defendant of the duty assumed in erecting the signaling device and would use his own senses, yet, a person, although exercising due care, doubtless would feel more secure and would be less vigilant than if defendant's implied assurance that the crossing could be made in safety had not existed." Rhineberger v. Thompson, 356 Mo. 520, 202 S.W.2d 64, 68. See also Rinderknecht v. Thompson, 359 Mo. 21, 220 S.W.2d 69; Mullis v. Thompson, 358 Mo. 230, 213 S.W.2d 941; Caraway v. Atchison, Topeka & Santa Fe Ry. Co., Mo.Sup., 318 S.W.2d 331, and Davis v. Illinois Terminal R. Co., Mo.Sup., 291 S.W. 2d 891.

■ Plaintiff could not rely solely upon the silent, unlit warning device but was also required to keep a lookout ahead in an effort to see any obstruction that might be in the path of her car. It is a fair inference from her testimony that she was looking generally ahead during the time she approached the crossing except that she looked to the north and to the south when 75 or 100 feet from the crossing. However, she stated that she did not see the "black object ahead" until her car was 40 feet from the track. It would therefore appear that the decisive question presented is whether, upon a consideration of all the surrounding circumstances, there was any substantial evidence tending to excuse plaintiff's failure to see the boxcar in time to have avoided the collision. Rowe v. Henwood, Mo.App., 207 S.W.2d 829.

■ We will briefly mention the circumstances heretofore detailed upon which plaintiff relies in explaining her failure to see the train before she did. She stated that (1) the signal warning device upon which she had always depended had not been activated; (2) it was dark and cloudy; (3) the dark surface of the street absorbed the light which was being projected from the headlights of her car; (4) the higher level of the track tended to cause the light to be projected under the boxcar rather

than on it; and (5) while her car was traveling from a point 75 feet from the crossing to a point 40 feet therefrom, she was momentarily blinded by the headlights from cars approaching from the west. Upon the basis of those circumstances plaintiff was permitted to state the conclusion (without objection) that she had seen "the object as quickly as I could."

In its brief defendant advances the contention that "a motorist whose car lights show the roadway ahead for only 100 feet, and who continues at unabated speed of 30 miles per hour at night up to a known crossing and gets so close to a train standing on the crossing that there is not sufficient space left to stop, has not discharged the duty to exercise the highest degree of care and must be held to be negligent as a matter of law." We do not agree that the circumstance stated would be sufficient to bar plaintiff's recovery. The evidence does not show that plaintiff was, at the time, aware of the fact that her lights were not disclosing objects for a distance of 100 feet as they ordinarily would. Therefore, since she could have stopped in 75 feet, it was not negligence, as a matter of law, to drive at a speed of 30 miles per hour as she approached the crossing.

Defendant also contends that plaintiff was negligent as a matter of law in permitting her car to travel 35 feet during the period she was momentarily blinded without reducing the speed thereof. The period defendant refers to was approximately three fourths of a second. We recognize that three fourths of a second is the normal reaction time of an individual. Under the circumstances of this case we hold that plaintiff was not guilty of contributory negligence as a matter of law in failing to apply her brakes during the short period of time she was blinded. See *Bedsaul v. Feeback*, 341 Mo. 50, 106 S.W.2d 431, and *Powell v. Schofield*, 223 Mo.App. 1041, 15 S.W. 2d 876.

In support of its general contention that plaintiff was guilty of contributory negli-

gence as a matter of law defendant has cited the cases of *Fugate v. St. Louis-S. F. Ry. Co.*, Mo.App., 348 S.W.2d 718; *Lohmann v. Wabash R. Co.*, 364 Mo. 910, 269 S.W.2d 885; *State ex rel. Kansas City So. Ry. Co. v. Shain*, 340 Mo. 1195, 105 S. W.2d 915; *Allinson v. Missouri-Kansas-Texas R. Co.*, Mo.App., 347 S.W.2d 902; *Rowe v. Henwood*, supra; *Dimond v. Terminal R. Ass'n of St. Louis*, 346 Mo. 333, 141 S.W.2d 789; *Turner v. Illinois Central R. Co.*, Mo.Sup., 319 S.W.2d 539; *Albertson v. Wabash R. Co.*, 363 Mo. 696, 253 S. W.2d 184; and *Fitzpatrick v. Kansas City So. Ry. Co.*, 347 Mo. 57, 146 S.W.2d 560. In all of the cases cited except *Dimond* and *Albertson* the plaintiff was held to be guilty of contributory negligence as a matter of law under rules of law that were correctly stated therein. However, none of those cases are decisive here because they involve facts which differ greatly from those in the case before us. "The difficulty, of course, is in applying the law to the particular facts and circumstances in each case. Distances, speed, physical facts, and conduct of the injured party, together with all the other facts and circumstances, must be taken into consideration in passing upon the question of contributory negligence. Each case is more or less different on the facts, and no hard and fast rules may be laid down applicable alike to all cases." *Flannagan v. St. Louis-San Francisco Ry. Co.*, Mo.App., 297 S.W. 463, 466. While we consider it unnecessary to point out the many factual differences between the instant case and the cases cited, we desire to stress one important circumstance appearing in the case at bar which was not present in any of those cases, i. e., the fact that the defendant had installed the automatic warning device which had not been activated by the train standing on the track.

We have concluded that all reasonable men would not agree that plaintiff failed to exercise the highest degree of care in not observing the boxcar in time to have stopped her car or to have taken other action to avoid the collision. The reasons de-

tailed in plaintiff's testimony explaining her failure to see the train before she did see it, when considered along with all the other facts and circumstances in evidence, constitute substantial evidence tending to excuse her admitted failure to see the train until her car was 40 feet from the tracks. We accordingly rule that plaintiff was not guilty of contributory negligence as a matter of law and that the court did not err in overruling defendant's motion for a directed verdict based solely upon that ground. See the Rhineberger, Rinderknecht, Mullis, Caraway, and Davis cases, cited supra.

The judgment is affirmed.

COIL, C., not participating.

HOUSER, C., concurs.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.