John L. SILVEY, Respondent,

v.

MISSOURI PACIFIC RAILROAD COMPANY, a Corp., Appellant.

No. 53907.

Supreme Court of Missouri, Division No. 2.

Sept. 8, 1969.

Rehearing Denied Oct. 13, 1969.

Murphy & Schlapprizzi, Donald L. Schlapprizzi, St. Louis, for respondent, John L. Silvey.

James A. Hesse, Charles P. Lippert, St. Louis, for appellant, Missouri Pacific Railroad Company.

HENRY I. EAGER, Special Commissioner.

Plaintiff was injured when he drove his tractor-trailer into the side of a diesel operated train at the crossing of State Highway 34 and the Missouri Pacific tracks in Wayne County. This occurred on May 29, 1963. His prayer was for $100,000; the jury returned a 9-man verdict for the defendant. On a previous trial plaintiff recovered a verdict of $30,000 and the court set it aside as against the weight of the evidence. Following the present trial the court granted plaintiff a new trial for error in giving defendant's contributory negligence Instruction No. 6; the order adopted four reasons or grounds from plaintiff's motion. Defendant duly appealed. Since defendant contends that plaintiff was guilty of contributory negligence as a matter of law, we shall state the facts in some detail. No point is made here on the pleadings; the amended petition charged negligence in several particulars but the case was submitted only upon the theory that defendant's flasher lights at the crossing "were in an inoperative condition and did not warn plaintiff of the train's approach" and further that defendant knew or should have known of such condition and was negligent. Defendant charged plaintiff with sundry forms of contributory negligence; it also pleaded in its amended answer the violation by plaintiff of Rule 43C of General Order 33–D of the Missouri Public Service Commission, which was and is in part as follows: "Every motor vehicle shall, upon approaching a railroad grade crossing, reduce speed to a rate that shall enable an immediate stop to be made before reaching the nearest rail of such crossing and shall proceed to cross only after due caution has been taken to ascertain that the course is clear." Plaintiff moved to strike this part of the answer but the motion was overruled, and the rule was later read into evidence. There has been much controversy over it.

Plaintiff's automobile transport trailer was loaded with 2 Ford cars and a truck chassis; his total gross weight was approximately 32,000 pounds and the unit was 45–50 feet long. Highway 34, as plaintiff approached the railroad crossing from the east, was level and so far as our facts

are concerned it was straight. It was of asphalt or blacktop, approximately 20 feet wide, with the center a little higher than the edges. The collision occurred on a clear, dry day at about 1:30 p. m. Plaintiff could not recall traveling there before, but he had been driving similar units for many years and had crossed "thousands" of railroads. He testified that he could and did see "flasher light heads" on the crossing when 500 feet away, and when he was traveling at approximately 50 miles an hour; on cross-examination he testified that he was aware of the railroad track for at least one thousand feet to the east. He testified positively that the flasher signals were not operating *at any time,* even after the collision; also that he was familiar with such signals and knew that when a train was coming the lights flash and a horn blows. A considerable battle waged here over the *view* that plaintiff had, or should have had, to the south (his left) as he approached the crossing. The many photographs offered and received are confusing in that they show such widely divergent views or sight distances. We shall mention some later, but we do not feel that any of them rise to the dignity of "physical facts" (Lohmann v̇. Wabash R. Co., 364 Mo. 910, 269 S.W.2d 885). Plaintiff testified: that as he approached the track there was a hill and a "screen of tall trees" on his left; that at 500 feet from the crossing he could see only about 80 feet down the track, and at 150 feet from the crossing the view had not improved; that it was only when he was about 80 feet from the crossing that he got a clear view to the south; that he began to slow at about 400 feet to be ready to change gears for the crossing; this reduced his speed to about 42 miles an hour; that he listened, as well as looked, for a train but heard no horn or bell; that he last looked to the south at about 150 feet, then looked to his right and back to the flasher signals; that when he was approximately 80 feet from the crossing he heard, for the first time, the horn of the engine and saw the train; at that instant he was still traveling approximately 42 miles an hour. He immediately applied all brakes and swerved to his left, apparently hoping that he could swerve off the road and down the ditch, but he hit the concrete instrument control box (approximately 10 feet east of the track and 12–15 feet south of the pavement), broke it off, lost control of his tractor, and struck the first car behind the two diesel units. His gas tanks exploded but he managed to get out of the cab; the fuel set some of the cars on fire as well as the plaintiff and the tractor was apparently a complete wreck. The train stopped with the rear of its 10 cars some 800–1200 feet beyond the crossing. That distance, as well as the speed of the train, was in dispute. Plaintiff, burned as he was, crossed the tracks and there met James Darnell, a telephone company employee, who put him in his truck and took him to a doctor in Piedmont. Darnell had driven up from the west immediately after the collision. When Darnell reached plaintiff, the latter said, apparently not in response to any question,—"If the lights had been working and they had blowed their horn sooner, I would have saw it." Plaintiff also testified that he told the "railroad people" before he left the scene that "their flasher lights were out."

Two witnesses testified for plaintiff that they had been over this same crossing eleven days previously and that the flasher signals did not operate at any time, although a train came from the south immediately after they crossed. These same two witnesses corroborated to some extent plaintiff's testimony about the obstruction of the view to the south as one comes west on 34, until he reaches a point 75–80 feet from the crossing. It was shown by answers to interrogatories that defendant had made no repairs on the flasher lights within 30 days prior to the collision. It was also shown that there were 96 feet of skidmarks from plaintiff's vehicle, starting at about the center of the road, 79 feet of which were on the pavement and 18 feet on the shoulder. It was not shown by which wheels

these were made. Plaintiff's own witness, an engineer, testified that at 42 miles an hour it would have taken plaintiff 195 feet to stop, and at 50 miles, 275 feet.

Defendant first offered in evidence (over objection) the rule of the Public Service Commission already quoted. The train dispatcher of defendant testified, somewhat vaguely, that there was no malfunction indicated by his lights at the time in question and that if the flasher lights had not been operating there would have been an indication of trouble on his board. The testimony of the crew of the train was of little significance except for that of the engineer and the fireman; they testified in substance that they could see (through a 2-inch peephole in the flasher head) that the flasher lights were working, that the horn and bell were sounded from a point 1320 feet east (the whistle post), that the headlight was burning, that they had seen plaintiff and assumed that he was going to stop; that he was still 150 feet east when the diesels reached the crossing. There is some indication that the tractor went "out of view" after they first saw it, presumably because of trees or brush. Apparently the engineer did not attempt to watch plaintiff after he was last seen 150 feet east of the crossing (although this may be immaterial). The engineer did not set the brakes until after he passed the crossing, if at all, but the impact broke some mechanism which automatically set the brakes. The speed tape of the engine, about which considerable question was raised for supposed lack of identification, showed that the train was traveling at 50–51 miles an hour.

There was much evidence from defendant which tended to indicate that the flasher lights were operating and that a malfunction would have been *most* improbable. That testimony is impressive but there is substantial evidence that the lights were *not* operating, and as a fact question that ends the matter.

■ We need say little more regarding the photographic exhibits. Generally the plaintiff's photographs taken from 150 feet east, 80 feet east and 40–45 feet east, show a very considerable obscuring of the view to the south by trees, until one passes the 80-foot point. The testimony does not show the height from which these photographs were taken. Defendant's photographs A, B & C were taken on June 3, 1963, by a reporter-photographer from Poplar Bluff from points 150 (A & B) and 100 (C) feet east of the crossing and supposedly about 5 feet above the surface of the road. They show a considerably greater view down the tracks to the south than do plaintiff's exhibits. It would appear that in these the camera was "looking" over the tops of some of the trees and brush which obscure the vision in plaintiff's photos. The disparity is confusing. The contrast is again shown in defendant's exhibits J and K, which show a considerable view down the track, but again seem to "look" over the tops of the trees on the south side of the highway which are closest to the track. The defendant's claim agent directed the taking of exhibits A–E inclusive. Each of those exhibits was made by taking 3 different exposures, at different angles, but from the same point; the resulting pictures were then pasted together to make a composite whole or panorama. Plaintiff insisted that defendant's exhibits A–D did not accurately show the view from the distances so given, nor until one reached a point relatively close to the tracks. One of plaintiff's witnesses also testified that one could not see the expanse of track shown in exhibit A from the supposed distance given. There is thus substantial controversy about all the photographs, and sufficient confusion exists to compel us to the view, already indicated, that none of them constitute "physical evidence" (Lohmann v. Wabash, supra). The same is true of the plat prepared by defendant's agents in October 1963 and received in evidence. Other photographic exhibits offered by each side do not alter our conclusions as stated. We cannot discuss all of them.

Defendant makes two points: (1) that plaintiff was guilty of contributory negli-

gence as a matter of law, and (2) that the giving of Instruction No. 6 did not constitute prejudicial error. We shall first consider (1). This contention is in two parts: (A) that plaintiff was guilty of negligence per se in violating PSC Rule 43C of its General Order 33–D, and (B) that he was guilty of common law contributory negligence as a matter of law. We have already quoted the applicable part of the rule. Defendant says that such a rule has the same standing as a statute and that a violation is negligence per se, citing Anderson v. Kraft, Mo.App., 129 S.W.2d 85. The Anderson case was decided on the theory that an instruction given for plaintiff was broader than the petition, but the court did say that safety rules (such as putting out flares) had the force and effect of statutes, "insofar as they announce rules of conduct * * *." Further, defendant says, where such a rule (or statute) has been violated the burden is on the party so violating it to prove a legal justification or excuse. Bowman v. Ryan, Mo.App., 343 S.W.2d 613; Ruediger v. American Bus Lines, Inc., Mo., 426 S.W.2d 4; Lochmoeller v. Kiel, Mo.App., 137 S.W.2d 625. Bowman involved a traffic statute; Ruediger an ICC regulation concerning the braking system, air pressure, etc., on a bus; and Lochmoeller, the statute requiring 2 sets of adequate brakes. In Ruediger it was apparently recognized that the defendant's checking of its braking systems just before leaving the bus terminal made a submissible fact issue on legal excuse, although the court approached the question from a somewhat different angle. In Lochmoeller, strongly relied on by defendant, it was held that evidence of a sudden brake failure made a fact question of defendant's supposed violation of the brake statute. And see also Edwards v. Mellen, Mo., 366 S.W.2d 317.

 The cited cases involve statutes or rules requiring specific things to be done or maintained, such as two sets of adequate brakes, the maintaining of certain air pressure in a braking system, putting out flares, or lights of a certain voltage in apartment hallways (Edwards). And see generally, Rice v. Allen, Mo., 309 S.W.2d 629, and Wilson v. Shumate, Mo., 296 S.W. 2d 72. The present rule, insofar as we are concerned with it, actually does no more than restate the common law duties of a truck driver (or other motorist) upon approaching a railroad crossing, as stated in our many crossing cases, such as Pipes v. Mo. Pac. R. Co., Mo., 338 S.W.2d 30; Lohmann v. Wabash R. Co., 364 Mo. 910, 269 S.W.2d 885; Borrson v. MKT R. Co., 351 Mo. 229, 172 S.W.2d 835, and others. These hold that there is a continuing duty of lookout, that a railroad crossing is in itself a warning of danger, that one must look, with the ability to stop, from a point where looking will be effective, and then slow or stop if the circumstances so indicate. We concern ourselves with only the first clause of Rule 43C which requires that the operator shall "reduce speed to a rate that shall enable an immediate stop to be made before reaching the nearest rail * * *." We hold this part of the rule valid, but repeat that it is merely a declaration of the common law. In this view, whatever would *excuse* the plaintiff from being contributorily negligent as a matter of law, would also make a jury question concerning his violation of the rule. For the reasons stated hereinafter in our discussion of the condition of the flasher lights, we hold that this was a jury issue. We have, as indicated, omitted all discussion of that part of the rule which states that one "Shall proceed to cross only after due caution * * *," because this plaintiff did not "proceed to cross" and that feature should not have been submitted. All the evidence shows that he was trying to *stop* before crossing, and the striking of the train was not a voluntary act on his part. We hold that these parts of the rule are separable under the facts of this case. Plaintiff's argument that it was impossible to comply with the rule does not impress us; counsel say that at some point one reaches a place where he cannot make an "immediate stop" before reaching the nearest rail. We con-

strue the rule to mean that one must proceed at such a speed that he can, in any event, stop before reaching the nearest rail if a train is coming. If necessary, he may stop and look before reaching the rail, or even get out and look. There is no impossibility about that. This plaintiff simply did not slow down enough or soon enough. His argument of compliance with the legal speed limit is wholly beside the point. Plaintiff's contention that the rule is so vague as to be invalid is denied. Nor is the argument of defendant that plaintiff has admitted violating the rule decisive; what plaintiff admits is that he did not reduce his speed to a point where he could stop, but he claims a legal justification. We hold that plaintiff was not guilty of negligence as a matter of law for a violation of the rule.

■ We now consider whether plaintiff was guilty of contributory negligence as a matter of law under the common law. The cases already noted above, Pipes, Lohmann and Borrson, and also Willis v. Wabash R. Co., Mo.App., 377 S.W.2d 489; Fugate v. St. L.-S. F. Ry. Co., Mo.App., 348 S.W.2d 718; Short v. MKT R. Co., Mo., 312 S.W. 2d 50; and Davenport v. Wabash R. Co., Mo.Banc, 435 S.W.2d 641, all hold, in substance: that a driver approaching a railroad crossing *has* a warning of danger from the track itself; that he must keep a continuous lookout, and he must drive at such a speed (stopping if necessary) that he may *look* from a point where looking will be *effective*, that is to say, from which he may see danger while he still has the distance in which and the means with which to stop before reaching the track. He must not only look, but he must see, and this from a place where he can effectively act. It would be useless to review the facts and the individual holdings of all these cases. In our view, if it were not for the testimony regarding the nonoperating flasher lights (which we do hold to be substantial evidence) we would be compelled to hold that plaintiff was guilty of negligence as a matter of law, and on his own testimony.

If he could not see effectively down the track until he was 80 feet from it, then *at that point* he should ordinarily have been traveling at such a speed that he could have *stopped* well within the 80 feet. However, there is a line of Missouri cases which alter this rule very materially where there are *inoperative* flasher lights at the crossing. Hale v. K. C. So. Ry. Co., Mo., 363 S.W.2d 542; Rhineberger v. Thompson, 356 Mo. 520, 202 S.W.2d 64; Grace v. Smith, et al., Mo.Banc, 277 S.W.2d 503; Caraway v. A. T. & S. F. Ry. Co., Mo., 318 S.W.2d 331; Mullis v. Thompson, 358 Mo 230, 213 S.W.2d 941. In Hale, the plaintiff drove her car at night into the side of a boxcar standing (as part of a train) on a city crossing where, to her knowledge, there were flasher signals; she had, as she testified, watched for flasher lights for two blocks and there were none operating; she also testified that she looked both to the north and south and saw nothing and that she was somewhat blinded by the lights of other cars, apparently shining under the standing train. The court there held that the inactive signal standard was an implied assurance to plaintiff that she could proceed in safety and, although one acting with due care should not rely solely on this, he would nevertheless feel "more secure and be less vigilant." Holding further that the presence of the inoperative light was thus a "very potent factor" in considering plaintiff's negligence, the court concluded that she was not contributorily negligent as a matter of law, and that her negligence was a question for the jury. In Rhineberger, Caraway, Grace and Mullis, supra, our court, after similar discussions and reasoning, reached the same result. Caraway involved a Kansas accident and a discussion of Kansas cases, but various Missouri cases are cited to the same effect, 318 S.W.2d l. c. 337. The rule seems to be firmly established. In fact it has been said that the defendant recognizes the danger of a crossing by installing flasher light signals. Grace v. Wabash, supra. In view of plaintiff's general familiarity with the operation of flasher signals, his recognition of those

here at from 500–1000 feet, his conduct in looking both ways, listening *and* watching the signals, and the substantial evidence of at least a somewhat obscured view, we hold that the issue of contributory negligence was a question for the jury.

■ Since the plaintiff's case was submissible we reach the supposed error in giving defendant's Instruction No. 6. It was as follows:

"Your verdict must be for the defendant (whether or not defendant was negligent) if you believe: First, the plaintiff either:

"Upon approaching this crossing, failed to reduce his speed to a rate that would enable him to make an immediate stop before reaching the nearest rail of the crossing and proceeded to attempt to cross said tracks without having taken due caution to ascertain that the course was clear, or

"Failed to heed the electric flasher warning signals, or,

"Failed to keep a careful lookout for an approaching train, or

"Drove his tractor-transport at an excessive speed, and

Second, plaintiff's conduct in any one or more of the respects submitted in paragraph First was negligent; and Third, such negligence of plaintiff directly caused or directly contributed to cause any injuries and damages plaintiff may have sustained.

M.A.I. 28.01. Tendered by Defendant."

The court granted plaintiff a new trial because: (a) the initial paragraph of "First" constituted a conjunctive submission, by the use of "and" instead of "or"; (b) that there was a double submission of "lookout," namely, that of plaintiff's "attempt to cross said tracks without having taken due caution to ascertain that the course was clear" (in the first paragraph), and thereafter in the general lookout submission of the third

assignment, with an attendant undue emphasis on lookout; also that the words "for an approaching train" were improper as isolating one aspect of plaintiff's duty; and (c) that the submission of excessive speed was not supported by the evidence. The court did not rely upon that paragraph (e) of plaintiff's motion for a new trial which alleged error in submitting that plaintiff "Failed to heed the electric flasher warning signals * * *" which, plaintiff says, did not require a finding that the signals *were operating* and gave the jury a "roving commission" on that contested issue. It is established in Missouri that a respondent may show error not relied upon by the trial court (if raised in his motion for a new trial) to *support* the judgment, but not to modify or change it. Overton v. Tesson, Mo., 355 S.W.2d 909; Cantwell v. Zook, Mo., 250 S.W.2d 980; Hunt v. Hunt, Mo. App., 387 S.W.2d 234; Flint v. Loew's, etc. Corp., 344 Mo. 310, 126 S.W.2d 193. And this rule is applicable to additional errors in instructions. Hence, we shall consider also assignment (e) of plaintiff's motion.

■ We hold that the instruction was erroneous for several reasons, though not agreeing entirely with the trial court. Defendant was entitled to submit as an assignment of negligence that part of Rule 43C which concerned the reducing of speed (the first 32 words) but not the remainder, for the reasons already stated. While this is essentially the submission of a breach of a common law duty, the wording of the rule creates a sufficient variation from the "excessive speed" and "lookout" hypotheses to justify the submission, and we thus recognize the force and wording of the rule. If plaintiff upon retrial offers and the court gives an affirmative defense instruction concerning the flasher lights as a legal justification, *then this instruction* should contain the added phrase, "Unless you believe that plaintiff was not negligent by reason of Instruction Number ——," or some similar wording. Ruling as we do concerning the submissibility of the rule violation, the arguments and assignments

about a conjunctive submission and also the "double" submission of lookout pass out of the case entirely. However, in submitting lookout again the words "for an approaching train" should be omitted; they are not recognized in MAI and they do unduly emphasize one element of plaintiff's duties. There was sufficient evidence for the submission of excessive speed and the trial court erred in relying upon that submission as error. Plaintiff and his counsel seem to have the erroneous idea that one is never driving at an excessive speed if he is within the speed limit. This is *not* true by any means, and there are many sets of circumstances where a lower speed may still be excessive. The rule is that one must drive at such speed as not to endanger persons or property under the particular circumstances, and the speed may well be excessive and constitute negligence though within the limits of statute or ordinance. Gerdel v. Broccard, Mo., 428 S.W.2d 492, and various cases there cited. There was ample evidence here that defendant was driving at such a speed that he could not stop. The submission of speed was proper but the words "his tractor-transport" should be omitted at the next trial. This covers the assignments relied upon by the trial court.

 The disjunctive submission of "failed to heed the electric flasher warning signals" was improper in form; it might well be taken as assuming, without requiring a finding thereon, that the signals *were* operating. We construe it as assuming a controverted fact. Perhaps, in the spirit of MAI the defect could be remedied by substituting the word "operating" for the word "the" just before the words "electric flasher." On this point there is some analogy to the opinion in Hawkeye-Security Ins. Co. v. Thomas Grain Fumigant Co., Mo.App., 407 S.W.2d 622.

What we have said effectively covers the point made by plaintiff concerning invalidity of the rule in question and the impropriety of using it in the case. The motion for a new trial was properly sustained; that order of the trial court is affirmed and the cause is remanded.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.